IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Unique S. Butler | ) |
| | ) |
|    Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. WMN-13-430 |
| | ) |
| PP&G, INC. | ) |
| | ) |
| | ) |
|    Defendant. | ) |
| _____ | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff by and through undersigned counsel, submits the following Memorandum of

Points and Authorities in support of her Motion for Partial Summary Judgment ("Motion")

against Defendant on the issue of whether the Plaintiff was an employee or an independent

contractor under both the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§

201 *et seq*. ("FLSA") and under the Maryland Wage Payment and Collection Law ("MWPCL"),

Maryland Code, Labor and Employment Article §§ 3-501 *et seq*.

**I. PLAINTIFF'S STATEMENT OF FACTS**[1]

Plaintiff has filed suit against the Defendant to recover damages under the Federal Fair

Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and to recover

damages under the Maryland Wage Payment and Collection Law ("MWPCL"), Maryland Code,

Labor and Employment Article §§ 3-501 *et seq*. Defendant owns and operates "NORMA

JEAN'S NITE CLUB," an exotic gentlemen's club in Baltimore, Maryland featuring semi-nude

---

[1] Plaintiff's Statement of Facts comes from paragraphs 5-25 of the Complaint.

female dancers. Plaintiff is an exotic dancers who worked at NORMA JEAN'S NITE CLUB at various times from October 2007 through August 2012[2].

Plaintiff was deliberately exploited and systematically misclassified as an "independent contractor." The result of such a misclassification was that Plaintiff was deprived of thousands of dollars in wages owed to her under Federal and Maryland law, as well as being subject to improper deductions from her pay for various fees and charges.

Defendant's employment practices were not only unfair but were also unlawful. To this end, Plaintiffs submit that liability is clear and proper, as a matter of law, with regard to the four (4) areas: (1) that Defendant was an employer and Plaintiff was an employee under the FLSA; (2) that Defendant is liable to Plaintiff for violating the minimum wage provisions of the FLSA; (3) that Plaintiff is entitled to liquidated damages under 29 U.S.C. § 216(b); and (4) that Plaintiff is entitled to reimbursement and statutory damages for wages that were improperly deducted from Plaintiff in violation of the MWPCL. Plaintiff have not moved for summary judgment as to (1) the amount of damages, or  (2) a finding of willfulness under the FLSA, as Plaintiff concedes that such issues should be determined at trial.

## II. MATERIAL FACTS NOT IN DISPUTE

1. Plaintiff worked for Defendant as exotic dancers at Defendant's exotic dance club in Baltimore, Maryland for various lengths of time between 2008 and 2010. *See* Complaint  at ¶¶ 5-6.

2. Defendant is a Maryland Corporation formed under the laws of the State of Maryland with its principal place of business in Baltimore, Maryland. *See id.* at ¶¶ 2, *Defendant's Admissions at ¶¶ 2.*

---

[2] Plaintiff's damages extends back only 3 years from the February 7, 2013 filing date.

3. Defendant is in the business of operating a nightclub and bar known as NORMA JEAN'S NITE CLUB, which features semi-nude exotic dancers. *See id.* at ¶ 2, *Defendant's Admissions at ¶¶ 3.*

4. While Plaintiff worked as an exotic dancer for Defendant, Defendant never once paid Plaintiff any wages for work duties performed. *See id.* at ¶¶ 5-15, *Defendant's Admissions at ¶¶ 4.*

5. At all times while Plaintiff worked as exotic dancer for Defendant, Defendant controlled every aspect of Plaintiff's work relationship with Defendant. *See id.* at ¶¶5-25, *Defendant's Admissions at ¶¶ 5*

6. At no time while Plaintiffs worked as exotic dancers for Defendant did Plaintiff enjoy any opportunity for profit or loss dependent on the financial success of the NORMA JEAN'S NITE CLUB. *See id.* at ¶ 16, *Defendant's Admissions at ¶¶ 6.*

7. At no time while Plaintiffs worked as exotic dancers for Defendant did Plaintiffs ever make a financial investment in the Mile High Club. *See id.* at ¶ 46, *Defendant's Admissions at ¶¶ 7.*

8. At all times while Plaintiffs worked as exotic dancers for Defendant, Plaintiffs work-related services were an integral part of Defendant's business. *See id.* at ¶¶ 5-25, *Defendant's Admissions at ¶¶ 8.*

9. Notwithstanding that Defendant paid Plaintiffs nothing for their hours worked each week; Defendant took deductions, charges, and fines, and withheld money from Plaintiffs' tips. *See id.* at ¶¶ 11-25, *Defendant's Admissions at ¶¶ 9-13.*

10. Defendant has no record of ever paying wages to or otherwise compensating Plaintiffs for work duties performed. *See id.* at ¶¶ 25, *Defendant's Admissions at ¶¶ 12.*

### A.  <u>Admissions</u>

Additionally, the Defendant was emailed and mailed first class mail Requests for Admissions on April 24, 2013 and the Defendant failed to respond as of today May 30, 2013, so they are deemed admitted. Exhibit 1. The deemed Admissions are as follows:

1. Plaintiff worked for Defendant as an exotic dancer at Defendants' NORMA JEAN'S NITE CLUB  exotic dance club  in Baltimore Maryland, from 2007 through 2012. *Defendant's Admissions at ¶¶ 1*

2. Defendant is a Limited Liability Company formed under the laws of the State of Maryland with its principal place of business in Baltimore Maryland. *Defendant's Admissions at ¶¶ 2*

3. Defendant is in the business of operating a nightclub and bar known as NORMA JEAN'S NITE CLUB, which features semi-nude and nude exotic dancers. *Defendant's Admissions at ¶¶ 3*

4. While Plaintiff worked as an exotic dancer for Defendant, Defendant never once paid Plaintiffs any wages for work duties performed. *Defendant's Admissions at ¶¶ 4*

5. While Plaintiff worked as an exotic dancer for Defendant, Defendant controlled every aspect of Plaintiff's work relationship with Defendant. *Defendant's Admissions at ¶¶ 5*

6. At no time while Plaintiff worked as an exotic dancer for Defendant did Plaintiff enjoy any opportunity for the profit or loss in business the of the NORMA JEAN'S NITE CLUB. *Defendant's Admissions at ¶¶ 6*

7. At no time while Plaintiff worked as an exotic dancer for Defendant did Plaintiff ever make a financial investment in the NORMA JEAN'S NITE CLUB. *Defendant's Admissions at ¶¶ 7*

8. At all times while Plaintiff worked as an exotic dancer for Defendant, Plaintiff's work-related services were an integral part of Defendant's business. *Defendant's Admissions at ¶¶ 8*

9. Defendant fined Plaintiff. *Defendant's Admissions at ¶¶ 9*

10. Defendant took deductions, and withheld money from Plaintiff's tips. *Defendant's Admissions at ¶¶ 10*

11. Defendant withheld money from Plaintiff's tips. *Defendant's Admissions at ¶¶ 11*

12. Defendant has no record of ever paying wages to or otherwise compensating Plaintiff for work duties performed. *Defendant's Admissions at ¶¶ 12*

*13.* Defendant set and controlled Plaintiff's work schedule. *Defendant's Admissions at ¶¶ 13*

*14.* Defendant had the ability to discipline Plaintiff by taking her off the schedule. *Defendant's Admissions at ¶¶ 14*

*15.* Defendant set club rules and standards for who could and could not be hired to work at NORMA JEAN'S NITE CLUB. *Defendant's Admissions at ¶¶ 15*

*16.* Defendant set a disciplinary schedule, which included fines, for violations of NORMA JEAN'S NITE CLUB rules. *Defendant's Admissions at ¶¶ 16*

17. Plaintiff has not invested money in Defendant nor does any Plaintiff hold any membership or ownership interest in NORMA JEAN'S NITE CLUB. *Defendant's Admissions at ¶¶ 17*

*18.* Plaintiff's earnings at NORMA JEAN'S NITE CLUB came only from her tips *Defendant's Admissions at ¶¶ 18*

19. The ability of an exotic dancer to entice her customers to give large tips is known in the industry as "hustling." *Defendant's Admissions at ¶¶ 19*

*20.* The Defendant is responsible for advertisement, location, business hours, maintenance of facilities, aesthetics, and inventory of beverages and food. *Defendant's Admissions at ¶¶ 20*

*21.* Defendant did not provide Plaintiff with a W-2 or 1099 for tax year 2009. *Defendant's Admissions at ¶¶ 21*

*22.* Defendant did not provide Plaintiff with a W-2 or 1099 for tax year 2010. *Defendant's Admissions at ¶¶ 22*

*23.* Defendant did not provide Plaintiff with a W-2 or 1099 for tax year 2011. *Defendant's Admissions at ¶¶ 23*

*24.* Defendant did not provide Plaintiff with a W-2 or 1099 for tax year 2012. *Defendant's Admissions at ¶¶ 24*

*25.* Plaintiff's income at NORMA JEAN'S NITE CLUB was based wholly on receipt of tips from Defendant's customers v *Defendant's Admissions at ¶¶ 25*

*26.* Plaintiff was at all times wholly dependent on Defendant to provide a facility and amenities therewith to perform her job duties while working at NORMA JEAN'S NITE CLUB. *Defendant's Admissions at ¶¶ 26*

'

27. Plaintiff's employment with Defendant was dependent on Defendant's wit,

financial savvy, and business know-how to keep Defendant's business financially sound, so as to keep the doors open and afford Plaintiff the opportunity to work at NORMA JEAN'S NITE CLUB. *Defendant's Admissions at ¶¶ 27*

28. Defendant did not require any level of education or previous certification (such as, by way of example, completion of a pole dance class) to work at NORMA JEAN'S NITE CLUB. *Defendant's Admissions at ¶¶ 28*

29. Plaintiff performed a duty that is central and integral to Defendant's business. *Defendant's Admissions at ¶¶ 29*

30. Defendant paid Plaintiff no wages for her hours worked. *Defendant's Admissions at ¶¶ 30*

31. Plaintiff never signed a document authorizing Defendant to take deductions for the cost of NORMA JEAN'S NITE CLUB. *Defendant's Admissions at ¶¶ 31*

32. Defendant did not rely on any U.S. Department of Labor Opinion in your decision not to pay Plaintiff wages as required by law. *Defendant's Admissions at ¶¶ 32*

33. Defendant did not rely on any Maryland Department of Labor Opinion in your decision not to pay Plaintiff wages as required by law. *Defendant's Admissions at ¶¶ 33*

34. Defendant did not rely on any 4th Circuit Court Opinion in your decision to not to pay Plaintiff wages as required by law. *Defendant's Admissions at ¶¶ 34*

35. Defendant did not rely on any Maryland Court Opinion in your decision not to pay Plaintiff wages as required by law. *Defendant's Admissions at ¶¶ 35*

36. Defendant cannot produce any documented evidence that it relied on any legal opinion, Department of Labor Opinion, or other written guidance to mitigate its failure to pay wages as required by law. *Defendant's Admissions at ¶¶ 36*

37. Defendant made over $500,000 in gross revenue in 2009. *Defendant's Admissions at ¶¶ 37*

38. Defendant made over $500,000 in gross revenue in 2010. *Defendant's Admissions at ¶¶ 38*

39. Defendant made over $500,000 in gross revenue in 2011. *Defendant's Admissions at ¶¶ 39*

40. Defendant made over $500,000 in gross revenue in 2012. *Defendant's Admissions at ¶¶ 40*

41. Plaintiff never authorized in writing for the Defendant to make deductions from Plaintiff's wages. *Defendant's Admissions at ¶¶ 41*

42. Defendant made deductions from Plaintiff's pay by way of charges, fees, and fines mandated by Defendant to be paid by Plaintiff to Defendant. *Defendant's Admissions at ¶¶ 42*

43. Defendant made deductions from Plaintiff's pay by way of charges mandated by Defendant to be paid by Plaintiff to Defendant. *Defendant's Admissions at ¶¶ 43*

44. Defendant made deductions from Plaintiff's pay by way of fees mandated by Defendant to be paid by Plaintiff to Defendant. *Defendant's Admissions at ¶¶ 44*

45. Defendant made deductions from Plaintiff's pay by way of fines mandated by Defendant to be paid by Plaintiff to Defendant. *Defendant's Admissions at ¶¶ 45*

46. Defendant made deductions from Plaintiff's wages without written permission from Plaintiff. *Defendant's Admissions at ¶¶ 46*

47. Defendant has a significant role in drawing customers to its nightclub. *Defendant's Admissions at ¶¶ 47*

48. Defendant never provided Plaintiff with a W-2 or 1099 reflecting the costs of NORMA JEAN'S NITE CLUB. *Defendant's Admissions at ¶¶ 48*

49. Plaintiffs never signed a document authorizing Defendant to take deductions for the costs of NORMA JEAN'S NITE CLUB. *Defendant's Admissions at ¶¶ 49*

50. Defendant is responsible for advertisement for NORMA JEAN'S NITE CLUB. *Defendant's Admissions at ¶¶ 50*

51. Defendant is responsible the location and business hours of NORMA JEAN'S NITE CLUB. *Defendant's Admissions at ¶¶ 51*

52. Defendant is responsible maintenance of facilities, aesthetics, and inventory of beverages and food NORMA JEAN'S NITE CLUB. *Defendant's Admissions at ¶¶ 52*

53. The Federal Fair Labor Standards Act, 29 U.S.C. sec. 201 *et seq.* ("FLSA"); *29 U.S.C. sec. 255* establishes the relevant statute of limitations for actions under the FLSA as follows:
      Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh–Healey Act or the Bacon-Davis Act- (a) if the cause of action accrues on or after May 14, 1947 – may be commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause action accrued;.... *Defendant's Admissions at ¶¶ 53*

54. Claims under the Maryland Wage Payment and Collection Law (MWPCL) are governed by Maryland's general three year statute of limitations. *See generally, Greene Tree Home Owners Assn. v. Greene Tree Assoc.*, 358 Md. 453, 749 A. 2d 806 (2000). That statute, codified at *Md. Cd. Annot., Courts & Judicial Proceedings* § 5-101 reads:

> A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced. *Defendant's Admissions at ¶¶ 54*

The Defendant received the Admissions and Document Requests because Defense counsel responded to the email the next day. Exhibit -Email from Plaintiff Counsel to Defense Counsel. The Defendant has failed to respond to the requests for admissions within the period of time required by the Federal Rules of Civil Procedure or thereafter as of this very day, May 30, 2013. The purpose of Rule 36 admissions is "'to narrow the array of issues before the court, and thus expedite both the discovery process and the resolution of the litigation.'" *EEOC v. Balt. Cnty.*,No. L-07-2500, 2011 WL 5375044, at *1 (D. Md. Nov. 7, 2011) (quoting *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 Fed. App'x 169, 172 (4th Cir. 2005)).

Federal Rule of Civil Procedure 36 governs requests for admission. Under that rule, a party "may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1)" that relate to "facts, the application of law to fact, or opinions about either" and "the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). A matter is deemed admitted if the responding party fails to timely provide a written answer or objection to the request for admission. Fed. R. Civ. P. 36(a)(3).

Rule 36 of the Federal Rules provides, in relevant part, that a "matter is admitted unless, within 30 days after service of the request ... the party to whom the request is directed serves

upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Fed. R. Civ. P. 36(a). "A party's failure to respond to a request for admissions under Federal Rule of Civil Procedure 36 may result in a material fact being deemed admitted and subject the party to an adverse grant of summary judgment." *Inre Savage,* 303 B.R. 766,772 (Bkrtcy.D.Md. 2003) (citing *Carney* v. *IRS,* 258 F.3d 415,417-18 (5th Cir. 2001)); *see also Adventis, Inc.* v. *Conso!. Prop. Holdings, Inc.,* 124 Fed. Appx. 169, 173 (4th Cir. 2005) ("Rule 36 admissions are conclusive for purposes of the litigation and are sufficient to support summary judgment." (quoting *Langer* v. *Monarch Life Ins. Co.,* 966 F.2d 786, 803 (3d Cir. 1992)). Once a matter that is properly subject of an admission under Rule 36(b) has been admitted during discovery, the district court is not free to disregard that admission. See Langer v. Monarch Life Ins. Co., 966 F.2d 786, 803 (3d Cir. 1992) ("Rule 36 admissions are conclusive for purposes of the litigation and are sufficient to support summary judgment." (emphasis added)).

## III. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask [herself] not whether [s]he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a

verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley,* 404 F.3d 243, 246-247 (4th Cir.2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW.,* 187 F.3d 415, 422 (4th Cir.1999)). Rule 56(e) also requires that "affidavits submitted by the party defending against a summary judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'" *Id.* (quoting 10B Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2740, at 399 (1998)). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson,* 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md.2001) (citations omitted). Furthermore, a party cannot create a genuine issue of fact through mere assertions. *Abcor Corp. v. AM Int'l, Inc.,* 916 F.2d 924, 929 (4th Cir.1990). Rather, to resist summary judgment, courts require that the opposing party adduce "specific, nonspeculative evidence..." *See, e.g., Bouchat v. Balt. Ravens Football Club,* 346 F.3d 514, 526 (4th Cir.2003). Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir.1993)

(quoting *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987)). As set forth below, even when viewing all facts in a light most favorable to Defendant, Partial Summary Judgment as to liability must be granted in favor of Plaintiffs.

## IV. ARGUMENT

### A. Plaintiffs Were At All Times Employees of Defendant and Were Never Independent Contractors.

Given the deemed Admissions, Defendant's lone cognizable defense in this case is that Plaintiffs should be regarded as independent contractors and not employees. Such classification is plainly contrary to law. The FLSA defines an employee as "any individual employed by an employer," 29 U.S.C. 203(e), and defines "employ" as "to suffer or permit to work." 29 U.S.C. 203(g). Courts have repeatedly recognized that the definition of "employee" under the FLSA must be given an expansive interpretation. *See United States v. Rosenwasser*, 323 U.S. at 362-63 ("A broader or more comprehensive coverage of employees . . . would be difficult to frame."). *See also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. at 326 (emphasizing the "striking breadth" of the FLSA's definition of "employ"). Thus, common law concepts of "employee" and "independent contractor" are not controlling in determining coverage under the FLSA. *See Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). Rather, courts must look to the "economic reality" of the relationship between the worker and employer to decide whether FLSA coverage exists. *Id.* Employees are those who, as a matter of economic reality, are dependent upon the business to which they render service, *see Bartels v. Birmingham*, 332 U.S. 126, 130 (1947), and are not in business for themselves. *See Baker*, 137 F.3d at 1443.

It is well settled that the mere fact that workers are labeled "independent contractors" does not negate the application of the economic realities test. *See Rutherford Food Corp.,* 331

U.S. at 729 ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]."); *see also Heath v. Perdue Farms, Inc.,* 87 F.Supp.2d 452, 457 (D.Md.2000) (quoting *Rutherford* for the proposition that "[c]ourts look not to the label, but to the underlying 'economic reality' of the relationship" in determining whether a worker is an independent contractor or employee under the FLSA). To further drive this point home, the Supreme Court articulates, "the purposes of the [FLSA] require that it be applied even to those who would decline its protections .... [otherwise] employers might be able to use superior bargaining power to coerce employees ... to waive their protections under the [FLSA]." *Tony and Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 302 (1985).

   Courts have established a six-factor test to determine whether a worker is an employee or an independent contractor, based on "economic reality."[3] These factors, derived from *United States v. Silk,* 331 U.S. 704 (1947), are: (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business. *Schultz v. Capital Intern. Sec., Inc.,* 466 F.3d 298, 304-05 (4th Cir. 2006). No single factor is dispositive, as "the test is designed to capture the economic realities of the relationship between the worker and putative employer." *Id.* at 305. "[T]he final

---

[3] The determination of "employee" status under the FLSA is a question of law, although it depends on subsidiary factual determinations. Employee status can be determined by the district court on a motion for summary judgment where there are no genuine disputes of material fact. *See Hopkins v. Cornerstone America,* 545 F.3d 338, 343–46 (5th Cir.2008) (upholding district court's summary judgment determination that workers were employees).

and determinative question must be whether the total[ity] of the [circumstances considered] establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA or are sufficiently independent to lie outside its ambit." *Usery v. Pilgrim Equip. Co.,* 527 F.2d 1308, 1311–12 (5th Cir.1976).

### 1. Control

Given the deemed Admissions,  where putative employers provide specific direction regarding the way in which workers, particularly low-skilled ones, are to perform their jobs, courts have weighed the control factor in favor of employee status. *See Heath* 87 F.Supp.2d at 457-58 (favoring employee status where employer published a training manual outlining all aspects of the work to be done by chicken catchers, and crew leaders provided continual on-site feedback); *see also Schultz,* 466 F.3d at 307 (favoring employee status where a standard operating procedure governed how security guards were to carry out their duties). In no uncertain terms, from the Admissions alone, Defendant exercised substantial control over every aspect of Plaintiffs' employment at NORMA JEAN'S NITE CLUB.

Defendant set and controlled Plaintiffs' work schedule. Defendant had the ability to discipline Plaintiff by taking her off the schedule. Defendant set club rules and standards for who could and could not be hired to work at NORMA JEAN'S NITE CLUB. It is clear that, even upon viewing the evidence in the light most favorable to Defendant, the Court must conclude that Defendant exercised a significant degree of control over Plaintiff's work.

### 2. Opportunity for Profit or Loss and Investment in the Business

Given the deemed Admissions in this case, Plaintiff has not invested in Defendant nor does Plaintiff hold any membership or ownership interest in Defendant. Plaintiffs' earnings came

only from her tips. The ability of an exotic dancer to entice her customers to give large tips is

known in the industry as "hustling." *See Harrell v. Diamond A Entm't, Inc.,* 992 F.Supp.

1343,1350–52 (M.D.Fla.1997). Courts have rejected the relevance of the "hustling" argument to

the opportunity for profit or loss factor of the economic reality test, finding that the appropriate

inquiry "has more to do with relative investments, with control over larger aspects of the

business, and with like forms of initiative." *Id.* As the Fifth Circuit explained in *Reich v. Circle*

*C. Investments, Inc.,* "once customers arrive at [the club], a dancer's initiative, hustle, and

costume significantly contribute to the amount of her tips. But [the club's owner] has a

significant role in drawing customers to its nightclub[ ].... [The owner] is responsible for

advertisement, location, business hours, maintenance of facilities, aesthetics, and inventory of

beverages and food." 998 F.2d at 328 (concluding that the dancers "are far more closely akin to

wage earners toiling for a living, than to independent entrepreneurs seeking a return on their

risky capital investments.").

    Further, it is well established that courts look at the opportunity for profit or loss as the

amount realized by a business over and above capital investment. *See Brock v. Mr. W*

*Fireworks. Inc.*, 814 F.2d 1042, 1050-51 (5th Cir.), *cert. denied*, 484 U.S. 924 (1987); *Donovan*

*v. Sureway Cleaners*, 656 F.2d 1368, 1371-72 (9th Cir. 1981), (The focus upon who controls the

major determinants of profit and who exercises the managerial skills on which profit or loss

depend.) *see also Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1294 (3rd Cir. 1991); *Reich v.*

*Circle C. Invs., Inc.*, 998 F.2d 324, 328 (5th Cir. 1993). Profit realized from capital expenditure

or managerial skills is distinguishable from increased earnings due to industry and efficiency.

*See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) ("While profits to the boners

depended upon the efficiency of their work, it was more like piecework than an enterprise that

14

actually depended for success upon the initiative, judgment or foresight of the typical independent contractor."). Here, as stated above, Plaintiff's income was based wholly on receipt of tips from Defendant's customers and Plaintiff was not afforded an opportunity for gain or loss over and above Defendant's capital investment.

Finally, this factor requires the Court to consider Plaintiff's investment in Defendant's business. In making the investment finding under the "economic reality" test, "it is appropriate to compare the worker's individual investment to the employer's investment in the overall operation." *Baker*, 137 F.3d at 1442. In weighing the relative investments of a worker and an alleged employer, courts must consider "the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself." *Dole v. Snell*, 875 F.2d 802, 810 (10th Cir. 1989).

Upon applying a relative investment analysis to the instant case, it is clear that a reasonable fact-finder would regard Plaintiffs' investment non-existent or, at worst, *minimis* compared to Defendant's business-specific investments. *See Mr. W Fireworks. Inc.*, 814 F.2d at 1047 (fire stand operator's use of a computer did not involve an investment because he had originally purchased the computer for schoolwork). Indeed, in *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 304 (5th Cir. 1998) the Fifth Circuit concluded that the relative investment factor weighed in favor of employee status, notwithstanding that workers owned or leased their work vehicles. The court noted that "[a]lthough the driver's investment of a vehicle is no small matter, that investment is somewhat diluted when one considers that the vehicle is also used by most drivers for personal purposes." *Id.* As such, this factor weighs strongly in favor of employee status.

3**. *Degree of Skill and Independent Initiative Required***

Given the deemed Admissions, in this case, Plaintiff possessed no specialized skill necessitating a prolonged analysis of this factor. Defendant did not require any level of education or previous certification (such as, by way of example, completion of a pole dance class) Many other courts have previously found that little specialized skill is required to be a nude dancer. *See, e.g., Morse,* 2010 WL 2346334, at *5; *Harrell,* 992 F.Supp. at 1351; *Circle C Invs.,* 998 F.2d at 328. As such, the Court must conclude that the lack of specialized skills required for Plaintiff's job weighs in favor of the Plaintiff's employee status.

### 4. Permanence or Duration of the Working Relationship

Given the deemed Admissions, in this case, Plaintiff worked for Defendant for 2007-2012. However, many courts, however, have found exotic dancers to be employees under the FLSA, despite finding that the employment relationship lacked a high degree of permanence. *See Circle C. Invs.,* 998 F.2d at 328–29 ("The transient nature of the work force is not enough here to remove the dancers from the protections of the FLSA.").

### 5. Integral Part of the Employer's Business

Given the deemed Admissions, NORMA JEAN'S NITE CLUB is a nightclub that features nude exotic dancers. As such, Defendant must concede that Plaintiffs perform a duty that is central and integral to Defendant's business. It is well established that where workers play a crucial role in a company's operation, the workers are likely to be employees. *See Rutherford Food*, 331 U.S. at 725 (boners are employees because activities are part of a series of interdependent steps, none of which was possible without the others); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1061 (2d Cir. 1988) (nurses are employees because "[t]heir services are the most integral part of Superior Care's operation"). As the Third Circuit stated in *Donovan v.*

16

*DialAmerica Mktg.*, 757 F.2d 1376, 1385 (3d Cir.), *cert. denied*, 474 U.S. 919 (1985),"regardless of the amount of work done, workers are most likely to be 'employees' under the FLSA if they perform the primary work of the alleged employer." As a consequence, this factor weighs heavily in favor of employee status.

### 6. Consideration of All Factors

Given the deemed Admissions and in analyzing all the factors, it is proper to consider Court holdings in other cases involving exotic dancers where the Court faced a decision of adjudicating dancers as employees or contractors. In these other similar cases, courts have consistently determined that exotic dancers are properly considered "employees" for purposes of the FLSA and equivalent state statutes. *See Thompson v. Linda and A Inc.,* 2011 WL 1602337 (D.D.C. 2011) (The United States District Court for the District of Columbia, relying heavily on similar cases, common sense, and the analysis used herein, concluded that dancers were employees covered by Federal and District of Columbia Wage Laws); *Harrell v. Diamond A. Entertainment, Inc.,* 992 F.Supp. 1343 (M.D. Fl. 1997), (The Court held that the dancer was an employee covered by the FLSA); *Reich v. Circle C. Investments, Inc.* 998, F.2d 324 (5th Cir.1993), (The Court confirmed that the topless dancers at the "Lipstick" and "Crazy Horse Saloon" nightclubs owned by the defendant were employees under the FLSA after defendants appealed a judgment in favor of the plaintiffs); *Chaves v. King Arthur's Lounge, Inc.,* Case No. 07-2505 (Sup. Ct. Mass.2009), (The Court found the dancers to be employees and not independent contractors under Federal and Massachusetts Wage Laws); and *Roberts v. Bomarto Ent., Inc*., 956 P.2d 254(1998) (Dancers, through the state commissioner of labor and industries, sued a club called Jiggles for violating the Oregon minimum wage law. The Court affirmed the trial court's decision that the club suffered and permitted the dancers to work, and therefore

employed these individuals.).

In considering the foregoing in its totality, it is clear that Plaintiffs were, at all times relevant to this litigation, employees of Defendant and was never independent contractor. As such, Defendant, as Plaintiff's employer, was obligated to pay Plaintiff's wages for hours worked as required by Federal and Maryland law. As set forth *infra*, Defendant failed, as a matter of law, to pay Plaintiff's wages as required by the FLSA.

### B. Defendant Failed to Pay Plaintiffs Wages at Least Equal to the Federal Minimum Wage.

Section 206(a)(1) of the FLSA provides that no employer shall employ any employee for an hourly wage of less than the Federal Minimum Wage. As set forth above, at all times relevant to this litigation, Plaintiffs were "employees" covered by the FLSA, 29 U.S.C. § 206(a)(1), and Defendant was their "employer." As such, Defendant, as Plaintiffs' employer, was obligated to compensate Plaintiffs for all hours worked at an hourly rate not less than the Federal Minimum Wage (For work performed on or after July 24, 2009, the Federal Minimum Wage was $7.25 per hour).

In this case, it is undisputed that Defendant paid Plaintiff  no wages for hours worked. Notwithstanding this fact, it is foreseeable that Defendant may attempt to manufacture an argument that Defendant provided Plaintiff with a non-monetary benefit that the Court should regard as compensation equaling or exceeding the Federal Minimum Wage. Such an argument, if made, is false, disingenuous, and would be argued in bad faith.

Under the FLSA, "wages" may include both actual paid wages and "the reasonable cost to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employee."

29 U.S.C. § 203(b). The Code of Federal Regulations requires "an employer who makes deductions from the wages of employees for 'board, lodging, or other facilities ... shall maintain and preserve records substantiating the cost of furnishing each class of facility." 29 C.F.R. § 516.27(a). It is the burden of the party claiming to have utilized the deduction or credit to prove the reasonable cost of the benefit by producing records or other credible evidence. *See Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 474 (11th Cir.1982). Courts, including this one, have found that where defendants have produced no records concerning the costs of facilities, they forfeit the ability to deduct the cost of the facilities. *See Fields v. Luther,* 1988 WL 59963 at *15 (D.Md.1988) (farm labor contractor not permitted to deduct gas and electricity from workers' wages where the only evidence presented as to cost of utilities was the average monthly benefits); *see also Jones v. Way of Hope, Inc.,* 2009 WL 3756843, (D.Md. Nov. 6, 2009); *Marroquin v. Canales,* 505 F.Supp.2d 283, 292-93 (D.Md.2007).

In this case, Defendant simply cannot argue that it is entitled to benefit from a deduction or credit argument because Defendant maintained no records to prove the reasonable cost of any alleged non-monetary benefit it now contends constitutes wages paid to Plaintiffs. Further, it is undisputed that Plaintiffs never signed a document authorizing Defendant to take deductions for the cost of the NORMA JEAN'S NITE CLUB facility. To such obvious failures, Defendant may suggest that Plaintiffs' awareness and acceptance of such alleged employment benefits entitled Defendant to deduct (or credit) the value of the benefits allegedly provided to Plaintiffs. Such an argument cannot legally be made. The FLSA's protections are construed strictly and Defendant's failure to obtain written authorization from Plaintiffs or to maintain documentation showing deductions from their (non-existent) wages necessarily precludes Defendant from crediting or deducting the act of providing a facility for Plaintiffs to dance in as wages paid to Plaintiffs. *See,*

*e.g., Marroquin,* 505 F.Supp.2d. at 292-93 (collecting authority supporting the proposition that an employer is not entitled to offset wages by lodging or board when it fails to maintain and preserve requisite documentation); *Jones,* 2009 WL 3756843 at *3 ("The failure to document the amount, the failure to obtain written authorization from Jones, and the failure to include detailed documentation on the amount of room and board all preclude the Defendants from counting room and board within the wages paid to [Plaintiff].").

If the Court is inclined to forgive Defendant for its failure to document the cost of the "facilities" or "advantages" allegedly provided to Plaintiff, the law still will not allow Defendant to benefit from an offset or credit for alleged non-monetary payments to Plaintiffs. Indeed, the rejection of Defendant's counsel's argument of "facilities" or "advantages" as wages lies in the clear language of the United States Department of Labor in 29 C.F.R. 531.32 (c)[4] as follows:

> *[T]he cost of furnishing "facilities" which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages.* Items … which have been held to be primarily for the benefit or convenience of the employer and are not therefore to be considered "facilities" … include: Safety caps, explosives, and miners' lamps (in the mining industry); electric power (used for commercial production in the interest of the employer); company police and guard protection; taxes and insurance on the employer's buildings which are not used for lodgings furnished to the employee; "dues" to chambers of commerce and other organizations used, for example, to repay subsidies given to the employer to locate his factory in a particular community; transportation charges where such transportation is an incident of and necessary to the employment (as in the case of maintenance-of-way employees of a railroad); charges for rental of uniforms where the nature of the business requires the employee to wear a

---

[4] Defendant may also cite Maryland Code Labor & Employment Section 3-418 in alleged support of its argument that the proposed "facilities" or "advantages" in this case (security guards, dressing rooms, stage, DJ, bathrooms, and showers) constitute wages. In that section, however, the determinative factor also focuses on the question of whether the alleged benefit was provided for the benefit or convenience of the employer. The Maryland law similarly rejects alleged "advantages" as wages where the "advantage" is primarily for the benefit or convenience of the employer.

uniform; medical services and hospitalization which the employer is
bound to furnish under workmen's compensation acts, or similar Federal,
State, or local law.

29 C.F.R. 531.32 (c) (emphasis supplied).

Thus the question for this Court becomes the analysis of whether Defendant's business

overhead (including on-premises security, use of on-premises dressing rooms with lockers, use

of bathroom facilities, use of make-up areas, use of mirrors, and use of showers, as well as a disk

jockey so Plaintiffs could dance to music for Defendant's patrons[5]), which Defendant will call

"facilities" or "advantages," was provided primarily for the benefit of Defendant (the employer)

or Plaintiffs (the employees). Courts have also long agreed that not everything of value received

by an employee from her employer represents income. *See e.g., Jones v. United States,* 60 Ct. Cl.

552 (1925) (quarters allowance for Army officer not income); *Saunders v. Commissioner,* 215

F.2d 768 (3d Cir. 1954) (meal allowance for state police not income); *Diamond v. Sturr,* 221

F.2d 264 (2d Cir. 1955) (food and lodging to employee while on duty at mental institution not

income); *United States v. Gotcher,* 401 F.2d 118 (5th Cir. 1968) (expense paid trip to Germany

not income); *Benaglia v. Commissioner,* 36 B.T.A. 838 (1937), *appeal dismissed,* 97 F.2d 996

(9th Cir. 1938), (meal and lodging for hotel manager not income); *Cavanagh v. Commissioner*

36 T.C. 300 (1961) (reimbursement for food and lodging incurred because of move not income).

### C. In Addition to Their Unpaid Wages, Plaintiffs are Entitled to Liquidated Damages in an Equal Amount to Their Unpaid Wages.

The FLSA "plainly envisions" that liquidated damages "are the norm" for violations of

the FLSA. *Mayhew v. Wells,* 125 F.3d 216, 220 (4th Cir.1997). The FLSA permits a trial court

---

[5] It cannot be overemphasized that never before had Defendant regarded these items as wages or income of any kind to Plaintiffs. Had Defendant actually been of this mindset, it is obvious that Defendant would have (by legal obligation) provided each Plaintiff with a W-2 or 1099 reflecting the costs of these "advantages."

in its sound discretion to refuse or reduce an award of liquidated damages where the Court is satisfied that (1) "the employer's failure to comply was in good faith," and (2) "the employer had reasonable grounds for believing that his act or omission was not violative of the Act." *Van Dyke v. Bluefield Gas Co.,* 210 F.2d 620, 622 (4th Cir.1954). The determination of good faith is discretionary with the trial judge. *Hayes v. Bill Haley and His Comets, Inc.,* 274 F.Supp. 34, 37 (E.D.Pa. 1967). Accordingly, the determination of the award for liquidated damages is a question for the Judge and is not proper for jury consideration. *McClanahan v. Matthews,* 440 F.2d 320, 322 (6th Cir. 1971); *Altman v. Stevens Fashion Fabrics,* 441 F.Supp. 1318, 1323 (N.D.Calif. 1977).

In *Wright v. Carrigg,* 275 F.2d 448, 449 (4th Cir.1960), the Fourth Circuit noted that §260 of the FLSA operates to excuse liability for liquidated damages only where the employer demonstrates both good faith *and* reasonable grounds for believing that he was not acting in violation of FLSA. Thus, the employer must satisfy both prongs of a two-prong test in order to be relieved of liability for liquidated damages. Moreover, the Fourth Circuit has held that the test of the good faith requirement to excuse liability is an objective one and not a subjective one. *See Clifton D. Mayhew, Inc. v. Wirtz,* 413 F.2d 658, 661-62 (4th Cir. 1969). Unlike the issue of willfulness where Plaintiff bears the burden of proof, on the issue of liquidated damages, Defendant bears the "plain and substantial burden" of proving that its actions were objectively reasonable and were prompted solely by good faith. Furthermore, a finding that the employer did not willfully violate the FLSA does not foreclose a finding that the employer did not act in good faith, as proof of an intentional violation of the FLSA is not necessary to obtain an award of liquidated damages. *Troutt v. Stavola Brothers, Inc.,* 905 F.Supp. 295, 302 (M.D.N.C.1995).

In the instant case, Defendant cannot demonstrate good faith and reasonable grounds for

its failure to pay Plaintiff wages as required by the FLSA. Defendant has not and cannot provide

any evidence that it relied on any legal advice, Department of Labor Opinion, or other guidance

to mitigate its failure to pay wages as required by law. In truth, Defendant did not make any

good faith attempt to learn how to pay Plaintiff's wages in accordance with applicable law. Thus,

it is clear that no good faith defense exists that Defendant can argue or otherwise submit for

failing to pay Plaintiff properly for hours worked. As a consequence, this Court must find as a

matter of law that Defendant is required to pay liquidated damages in an equal amount to the

unpaid wages Plaintiff will be entitled to collect.

> **D. Defendant's Practice of Deducting Plaintiffs' Wages for Various Fees and Fines Associated with Plaintiffs' Employment Duties and Performances Constituted Unlawful Deductions in Violation of the MWPCL.**

Pursuant to MWPCL § 3-503, "[a]n employer may not make a deduction from the wage

of an employee **unless** the deduction is (1) ordered by a court of competent jurisdiction; (2)

authorized expressly in writing by the employee; (3) allowed by the Commissioner because the

employee has received full consideration for the deduction; or (4) otherwise made in accordance

with any law or any rule or regulation issued by a governmental unit. In the absence of one of

the limited aforementioned exceptions, an employer is **not** allowed to make deductions from the

wage of an employee unless it is authorized in writing by the employee." *Marroquin,* 505

F.Supp.2d. at 292-93.

In this case, Defendant made deductions from Plaintiffs' pay by way of charges, fees, and

fines mandated by Defendant to be paid by Plaintiffs to Defendant. *See Admissions*

Defendant made these deductions from Plaintiff's pay without any purpose or excuse allowable

under MWPCL 3-503 and without written permission by Plaintiff. Defendant's action of taking

deductions from Plaintiff's wages was unlawful and constituted a violation of the MWPCL for

which Defendant is liable to Plaintiff as a matter of law. As such, Plaintiff is entitled to recover all unlawfully deducted wages in an amount to be determined in a subsequent damages hearing.

## V. CONCLUSION

In consideration of the foregoing, and for good cause shown, Plaintiff requests that this Honorable Court enter Judgment as a Matter of Law in favor of Plaintiff and against Defendant with regard to the following findings:

1. Defendant was, at all times relevant, Plaintiff's employer under the FLSA and MWPCL;

2. Defendant is liable to Plaintiff (in an amount to be determined at a subsequent damages hearing) for violating the minimum wage provisions of the FLSA;

3. Plaintiffs are entitled to liquidated damages in an equal amount to their unpaid minimum wage payments (to be determined at a subsequent damages hearing) under 29 U.S.C. § 216(b); and

4. Defendant is liable to Plaintiff in the amount of all improperly deducted wages from Plaintiffs (in an amount to be determined at a subsequent damages hearing) in violation of the MWPCL.

Respectfully submitted,

_____/s/_____
Jimmy A. Bell, Esq.
Law Office of Jimmy A. Bell, P.C.
P.O. Box 639
Oxon Hill, MD 20750
Attorney for Plaintiff