IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNIQUE S. BUTLER

v.

PP&G, INC.

Civil Action No. WMN-13-430

## MEMORANDUM

Before the Court is Plaintiff's Motion for Partial Summary Judgment. ECF No. 10. The motion is ripe. Upon consideration of the limited factual record and the applicable law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Unique Butler, brings this action to recover unpaid minimum wages from Defendant, PP&G, Inc., which owns and operates Norma Jean's Night Club ("Night Club"). The Night Club is a gentleman's club that features female entertainers. The only facts that the parties do not dispute are: (1) Plaintiff worked as an exotic dancer at the Night Club and (2) Defendant did not pay her any wages. Defendant argues that it did not pay Plaintiff wages because she was an independent contractor and she elected not to change her status to become an employee when she was provided with the opportunity. Thus, the main issue before the Court is whether Plaintiff was an independent

contractor or an employee entitled to collect minimum wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and the Maryland Wage Payment and Collection Law (MWPCL), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509.[1]

Plaintiff moves for partial summary judgment, asking the Court to find, as a matter of law, that: (1) Plaintiff was an employee under FLSA; (2) Defendant is liable to Plaintiff under FLSA; (3) Plaintiff is entitled to liquidated damages pursuant to § 216(b) of FLSA; and (4) Defendant violated MWPCL and thus, Plaintiff is entitled to treble damages under MWPCL. ECF No. 10 at 2. Were the Court to rule in Plaintiff's favor on these issues, Plaintiff asserts that the only matters that would be left for trial would be the amount of damages and whether Defendant's violation of FLSA was willful.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The purpose of summary judgment is to dismiss claims and defenses that lack evidentiary support. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). When the moving party "will have the burden of

---

[1] Plaintiff also brings a claim for negligence, which she does not reference in her Motion for Partial Summary Judgment.

proof at trial, they must show that no material fact remains by pointing to admissible evidence on each of the elements of their claim." Major v. CSX Transp., Inc., 170 F. Supp. 2d 563 (D. Md. 2001). The non-moving party must then point to the record showing an absence of evidence for an essential element of the moving party's claim or present "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324.

All facts and inferences will be drawn in a light most favorable to the non-moving party. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996). The court, however, will not rely on a party's allegations that lack supporting evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[A] plaintiff may not . . . rest on mere allegations or denials of his pleadings." Id. at 259. (citations omitted). A motion for summary judgment will be denied when there is a "dispute about a material fact [that] is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**III. DISCUSSION**

As an initial matter, the Court is concerned about the quality of briefing from both parties. In Plaintiff's reply, halfway through the pleading, Plaintiff's counsel simply copies

3

and pastes, without explanation, nine pages of the argument he made in his original motion. Defendant's counsel's submission is similarly deficient. The Court's concerns here include the use of different fonts, grammatical errors, and citation mistakes. More significantly, the lack of any citation to relevant case law strongly undermines the Defendant's legal argument. These deficiencies notwithstanding, the Court will address the arguments made by the parties.

In her motion, Plaintiff relies almost exclusively on Defendant's "admissions" to prove that she was an employee at the Night Club. She argues that Defendant's untimely response to her Rule 36 Requests for Admissions conclusively establishes those requested admissions as now admitted. Defendant, however, asserts that this Court should allow it to withdraw those admissions. Because they are so central to Plaintiff's argument, this Court must first resolve whether the admissions can be withdrawn.

Plaintiff's counsel states that on April 24, 2013, he emailed, and sent by first class mail, Requests for Admissions to Defendant, to which Defendant did not respond within the thirty-day time frame provided by Rule 36(a). ECF No. 10 at 4. Without framing a clear argument that the Requests for Admissions were not properly served, Defendant's counsel states that, although he received the Requests for Admissions on April

24, 2013, by email, he did not receive the discovery request in the mail.  ECF No. 12 at 7.[2]  Without actually moving to strike the Requests, Defendant also notes that Plaintiff propounded 54 requests for admissions, which is more than the 30 requests allowed under Local Rule 104.1.  Defendant's counsel further explains that he failed to timely respond to the requests because he relied on Plaintiff's counsel verbal agreement to extend the time for him to respond, although Plaintiff's counsel denies making that agreement.  When Defendant's counsel learned that Plaintiff's counsel was using the admissions in support of a motion for partial summary judgment, he sent Defendant's responses to Plaintiff's counsel by fax on June 3, 2013, and by email on June 4, 2013.

The Court will assume, without deciding, that Plaintiff's service of the Requests for Admissions was proper.  The Court will also assume, without deciding, that Plaintiff's counsel did not agree to an extension.[3]  Nevertheless, the Court will also

---

[2] Under Rule 5(a)(1)(C) of the Federal Rules of Civil Procedure, "a discovery paper" must "be served on a party, unless the court orders otherwise."  A discovery request is served under Rule 5(b)(2)(E) by "sending it by electronic means if the person consented in writing — in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served."  Plaintiff has not provided proof of this written consent.

[3] From counsel's narrative of events, it appears likely that there was simply a miscommunication about the time in which Defendant was to respond to the Request for Admissions.  Counsel

allow Defendant to withdraw those admissions, for the reasons that follow.

Rule 36(a)(1) of the Federal Rules of Civil Procedure states that "a party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1)." When a party does not respond to the Request for Admissions within 30 days after being served, the admissions are automatically admitted. Fed. R. Civ. P. 30(a)(3). The purpose of this discovery tool is to "narrow the array of issues before the court, and thus expedite both the discovery process and the resolution of the litigation." Adventis, Inc. v. Consol. Prop. Holdings, Inc., 124 F. App'x 169, 172 (4th Cir. 2005).

Rule 36(b), however, permits the withdrawal or amendment of a conclusively established admission "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." "The court has 'considerable discretion over the withdrawal of admissions once they have been made.'" Kress v. Food Emp'rs Labor Relations Ass'n, 285 F. Supp. 2d 678, 681 (D. Md. 2003) (quoting

---

were discussing the scheduling of Plaintiff's deposition and the timing for the response to the Requests appears to have been a peripheral issue. As counsel for Defendant now recognizes, extensions of this sort are the kind of agreements that should be memorialized in writing.

U.S. v. Turk, 139 F.R.D. 615, 618 (D. Md. 1991)).  In this case, both prongs of Rule 36(b) are met.

The first prong evaluates whether withdrawal of the admissions will "facilitate the development of the case in reaching the truth." J & J Sports Prods., Inc. v. Mumford, Civ. No. 10-2967, 2012 WL 1409588, at *3 (D. Md. Apr. 20, 2012) (quoting McClanahan v. Aetna Life Ins. Co., 144 F.R.D. 316, 320 (W.D. Va. 1992)).  Here, Plaintiff's Requests for Admissions reiterated almost all of the allegations outlined in the Complaint and, as a result, implicates the Defendant's liability without a presentation of the merits.  See Kress, 285 F. Supp. 2d at 681 (finding that "refusal to allow the [Defendant] to withdraw admissions would unduly hamper the [Defendant's] ability to present its case on the merits").  Turk, 139 F.R.D. at 618 (holding that "[i]t does not further the interests of justice to automatically determine all the issues of a lawsuit and enter summary judgment against a party because a deadline is missed").  Allowing the withdrawal of the admissions will permit the Court to decide this case on the merits.

The Court notes also that Defendant denied many of the admissions in its Answer to the Complaint.  ECF No. 3.  It has been observed that:

> [w]hen a party . . . uses the rule to harass the
> other side or, as in this case with the wild-eyed
> hope that the other side will fail to answer and

> therefore admit essential elements (that the
> party has already denied in its answer), the
> rule's time-saving function ceases; the rule
> instead becomes a weapon, dragging out the
> litigation and wasting valuable resources.

Perez v. Miami-Dade Cnty., 297 F.3d 1255, 1268 (11th Cir. 2002).

The second prong assesses "the difficulty the party opposing the motion to withdraw will face as a result of the sudden need to obtain evidence to prove the matter it had previously relied upon as answered." Mumford, 2012 WL 1409588 at *4. See also 8B Wright, Miller, & Marcus, Federal Practice and Procedure § 2264 (3d ed. 2010) ("The reference to 'prejudice' in Rule 36(b) is to the prejudice stemming from reliance on the binding effect of the admission."). In this case, despite Plaintiff's reliance on these admissions for her Motion for Partial Summary Judgment, discovery has not yet closed and thus, she still has the opportunity to gather evidence in support of her case. See Union Pac. R.R. Co. v. Balt. & Annapolis R.R. Co., No. 08-2685, 2009 WL 3633349 at *2 (D. Md. Oct. 27, 2009) (finding plaintiff would not be prejudiced where defendant's responses to the admissions were only one month late). In addition, Plaintiff's inability to rely on these admissions does "not outweigh defendant's entitlement to consideration of its case on the merits," id. at *3, particularly since discovery has not ended. Therefore, the

Court will permit Defendant to withdraw the admissions and replace them with its late-filed responses.

With the withdrawal of Defendant's admissions, Plaintiff's Motion for Partial Summary Judgment rests mainly on unsupported allegations. In opposition to the motion, Defendant presents four affidavits to demonstrate that there is a genuine issue of dispute concerning Plaintiff's claim to employee status under FLSA and MWPCL. Plaintiff then replies by presenting her own affidavit. Plaintiff's affidavit, however, merely responds to the statements presented in the affidavits submitted by Defendant and provides minimal substance to support her alleged "employee" status.

To recover minimum wages under FLSA and MWPCL, the Court must find that there was an employment relationship between the plaintiff and the defendant. Under FLSA, an employee is "any individual employed by an employer" and to employ is "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), (g). FLSA has been consistently construed liberally to ensure that it "applie[s] even to those who would decline its protections" because "employers might be able to use superior bargaining power to coerce employees to . . . waive their protections under the Act." Tony and Susan Alamo Found. v. Sec. of Labor, 471 U.S. 290, 296, 302 (1985). Under MWPCL, an employer is "any person

who employs an individual in the State." Md. Code Ann., Lab. & Empl. § 3-501(b).

In order to determine whether an individual is an employee, courts must look to the "economic reality" of the relationship by analyzing the following six factors:

(1) The degree of control that the putative employer has over the manner in which the work is performed;

(2) The worker's opportunities for profit or loss dependent on his managerial skill;

(3) the worker's investment in equipment or material, or his employment of other workers;

(4) The degree of skill required for the work;

(5) The permanence of the working relationship; and

(6) The degree to which the services rendered are an integral part of the putative employer's business.

Schultz v. Capital Intern. Sec., Inc., 466 F.3d 298, 305 (4th Cir. 2006). "No single factor is dispositive." Id. Furthermore, "[c]ourts have also stressed that the label that the parties give to their relationship is not controlling." Heath v. Perdue Farms, Inc., 87 F. Supp. 2d 454, 457 (D. Md. 2000).

While the current record before the Court is woefully insufficient to resolve Plaintiff's employment status as a matter of law, it would certainly appear, based on that record, that Plaintiff was an employee of The Night Club. Some of the statements in the affidavits submitted by Defendant actually

support that finding.  For example, as to the second factor, opportunity for profit or loss, Defendant admits that Plaintiff does not have the opportunity for even minimal loss.  Defendant states that when a dancer "has not earned enough to pay the maintenance fee [charged to dancers by Defendant], then it shall be waived without a fine, penalty or sanction of any kind."  ECF No. 12-1 at 3.  Other courts have recognized the limited opportunities for exotic dancers to realize profit.  See Reich v. Circle C. Invs., Inc., 998 F.2d 324, 328 (5th Cir. 1993) (finding the employer "has a significant role in drawing customers to its nightclubs" and thus, "the dancers are far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments") (internal citations omitted).

    Defendant also implicitly acknowledges that dancers do not invest in the equipment needed for the facility.  While Defendant requires all its dancers to pay a "maintenance fee" because "they use all of the facilities as an 'Entertainer,'" Defendant states that the maintenance fee is applied to the cleaning of the night club rather than any sort of investment in the property or the business.  ECF No. 12-2 at 3.  See Clincy v. Galardi S. Enters., Inc., 808 F. Supp. 2d 1326, 1346 (N.D. Ga. 2011) (noting that plaintiffs "do not make any capital investment in Defendant's facilities, advertising, maintenance,

security, staff, sound system and lights, food beverage . . . the courts which have addressed this factor have universally concluded that a dancer's investment is minor when compared to the club's investment") (citations omitted).

Furthermore, Defendant concedes that Plaintiff's position did not require any "special skill." Defendant states that the entertainers are not required to take dancing classes because the primary considerations when hiring dancers are the "personality" and "presence" of the individual. ECF No. 12 at 13. Lastly, while Defendant argues that "Plaintiff alone is not an integral part of the Defendant's business," it admits that the entertainers/dancers "collectively were an integral part of the Defendant's business." Id. at 14. See Thompson, 779 F. Supp. 2d at 151 (quoting Morrison v. Int'l Programs Consortium, Inc., 253 F.3d 5, 11 (D.C. Cir. 2001)) (holding [t]he Court's inquiry, however, focuses on 'the extent to which the work is an integral part of the employer's business,' not on the role of the employee individually").

While the record is insufficient to find for Plaintiff at this time, the Court notes that many federal courts have found that exotic dancers are employees under FLSA when applying the six factor test in similar contexts. See, e.g., Thompson, 779 F. Supp. 2d at 151 (finding that exotic dancers were employees under the FLSA and under applicable state labor laws); Clincy,

12

808 F. Supp. 2d at 1350 (same); Morse v. Mer Corp., No. 08-1389, 2010 WL 2346334, at *6 (S.D. Ind. June 4, 2010) (same); Reich, 998 F.2d at 329 (affirming the district court's holding that the exotic dancers were employees under the protection of the FLSA); Thornton v. Crazy Horse, Inc., No. 06-251, 2012 WL 2175753, at *16 (D. Ak. June 14, 2012) (finding that an adult entertainment club was liable to dancers for withholding minimum wages).

**IV. CONCLUSION**

For the above-stated reasons, the Court will deny Plaintiff's motion. A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: August 6, 2013.