IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Unique S. Butler | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. WMN-13-430 |
| | ) |
| PP&G, INC. | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff by and through undersigned counsel, submits the following Memorandum of Points and Authorities in support of her Second Motion for Partial Summary Judgment ("Motion") against Defendant on the issue of whether the Plaintiff was an employee or an independent contractor under both the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and under the Maryland Wage Payment and Collection Law ("MWPCL"), Maryland Code, Labor and Employment Article §§ 3-501 *et seq*.

## I. PLAINTIFF'S STATEMENT OF FACTS[1]

Plaintiff has filed suit against the Defendant to recover damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and to recover damages under the Maryland Wage Payment and Collection Law ("MWPCL"), Maryland Code, Labor and Employment Article §§ 3-501 *et seq*. Defendant owns and operates "NORMA JEAN'S NITE CLUB," an exotic gentlemen's club in Baltimore, Maryland featuring semi-nude

[1] Plaintiff's Statement of Facts comes from paragraphs 5-25 of the Complaint.

female dancers. Plaintiff is an exotic dancers who worked at NORMA JEAN'S NITE CLUB at various times from October 2007 through August 2012[2].

Plaintiff was deliberately exploited and systematically misclassified as an "independent contractor." The result of such a misclassification was that Plaintiff was deprived of thousands of dollars in wages owed to her under Federal and Maryland law, as well as being subject to improper deductions from her pay for various fees and charges.

Defendant's employment practices were not only unfair but were also unlawful. To this end, Plaintiff submit that liability is clear and proper, as a matter of law, with regard to the four (4) areas: (1) that Defendant was an employer and Plaintiff was an employee under the FLSA; (2) that Defendant is liable to Plaintiff for violating the minimum wage provisions of the FLSA; (3) that Plaintiff is entitled to liquidated damages under 29 U.S.C. § 216(b); and (4) that Plaintiff is entitled to reimbursement and statutory damages for wages that were improperly deducted from Plaintiff in violation of the MWPCL. Plaintiff has not moved for summary judgment as to (1) the amount of damages, or (2) a finding of willfulness under the FLSA, as Plaintiff concedes that such issues should be determined at trial.

## II. MATERIAL FACTS NOT IN DISPUTE

1. Plaintiff worked for Defendant as exotic dancers at Defendant's exotic dance club in Baltimore, Maryland for various lengths of time between January 2010 and June 2012. *See* Complaint at ¶¶ 5-6., Exhibit 4, Entertainers Application dated January 24, 2010[3].

2. Defendant is a Maryland Corporation formed under the laws of the State of

---

[2] Plaintiff's damages extends back only 3 years from the February 7, 2013 filing date.

[3] Plaintiff's damages extends back only 3 years from the February 7, 2013 filing date.

Maryland with its principal place of business in Baltimore, Maryland. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q The Defendant is a limited liability company formed under the laws of the State of Maryland with the principal place of business in Baltimore, Maryland, correct?
> A Yes, sir.

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6), General Manager, designee of Defendant PP&G, Inc.*, P.15

3. Defendant is in the business of operating a nightclub and bar known as NORMA JEAN’S NITE CLUB, which features semi-nude exotic dancers. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q I said: The Defendant is in the business of operating a nightclub and a bar known as Norma Jean's Nightclub?
> A Correct.
> Q Okay. And they feature semi-nude and nude exotic dancers?
> A That's one of the features, yes.

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.16

4. While Plaintiff worked as an exotic dancer for Defendant, Defendant never once paid Plaintiff any wages for work duties performed. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Okay. And Unique Butler, the Plaintiff, worked as an exotic dancer for the Defendant, and the Defendant never once paid Plaintiff any wages for work duties performed?
> A See, when we started like --
> Q That's a yes or no. You never paid her any --
> A No. Independent contractors don't get paid. P.16
>
> Q Okay. Defendant has no record of ever paying wages or otherwise compensating Plaintiff for work duties performed? You never paid her wages?
> A Never paid her, no. P.22

Q The Defendant paid Plaintiff no wages for her hours worked?
A No. P.37

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.16, P.22, P.37

5. At all times while Plaintiff worked as exotic dancer for Defendant, Defendant controlled every aspect of Plaintiff's work relationship with Defendant. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

Q Did you have the ability to discipline the Plaintiff by taking her off the schedule? Either you had the ability or you --
A Yes. P. 23-24

Q Okay. So you set the club rules and standards for who could and could not be hired and work for Norma Jean's Nightclub?
A Yes. P. 24

Q The Defendant is responsible for advertising, location, business hours, maintenance of facility, aesthetics, and inventory of beverages and food?
A Yes. There's no food. P.30

Q At all times, the Plaintiff was wholly dependent on the Defendant to provide a facility, as well as amenities to perform her job duties while working at Norma Jean's Nightclub?
A Yes. P.33

Q Okay. The Plaintiff's employment with Defendant was dependent on Defendant's financial savvy and business know-how to keep Defendant's business financially sound so as to keep the doors open and afford Plaintiff the opportunity to work at Norma Jean's Nightclub?
A Yes. P.33

Q And what was the paramount issue used in your determination to hire an independent contractor?
A Well, when I contract dancers, I'm mostly looking for attitude. You know, positive attitude. You know what I mean? Someone who makes you feel comfortable. Just like, you know -- that's all. P.72

Q Okay. The Defendant did not require any level of education or previous certification such as by way of example completion of a pole dance class to work at Norma Jean's Nightclub?
A No skill was necessary. No skill was required. P.33

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.23, P.24, P.30, P.33, P.72

6. At no time while Plaintiff worked as an exotic dancers for Defendant did Plaintiff enjoy any opportunity for profit or loss dependent on the financial success of the NORMA JEAN'S NITE CLUB. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q She didn't have the opportunity to enjoy in the profit or loss of the business of Norma Jean's Nightclub?
> A No. P. 17-18
>
> Q The Plaintiff has not invested money into Norma Jean's Nightclub?
> A No.
> Q And the Plaintiff doesn't hold any membership or ownership interest in Norma Jean's Nightclub?
> A No.
> Q And the Plaintiff's earnings at Norma Jean's Nightclub came only from her tips?
> A Yes. P. 30
>
> Okay. Now, the Defendant, PP&G, Inc., was solely responsible for any investments in the business; is that correct?
> A Correct.
> Q Did the entertainers as independent contractors share in the profits of --
> A Say that one more time. I'm sorry.
> Q Yes, sir. As entertainers who were independent contractors, did they share in the profits of the business?
> A No. P.73

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.17, P.18, P.30, P.73.

7. At no time while Plaintiff worked as an exotic dancer for Defendant did Plaintiff ever make a financial investment in the Club. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

Q The Plaintiff has not invested money into Norma Jean's Nightclub?
A No.
Q And the Plaintiff doesn't hold any membership or ownership interest in Norma Jean's Nightclub?
A No.
Q And the Plaintiff's earnings at Norma Jean's Nightclub came only from her tips?
A Yes. P. 30

Okay. Now, the Defendant, PP&G, Inc., was solely responsible for any investments in the business; is that correct?
A Correct.
Q Did the entertainers as independent contractors share in the profits of --
A Say that one more time. I'm sorry.
Q Yes, sir. As entertainers who were independent contractors, did they share in the profits of the business?
A No. P.73

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.30, P.73.

8. At all times while Plaintiff worked as an exotic dancer for Defendant, Plaintiff's work-related services were an integral part of Defendant's business. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

Q I said: The Defendant is in the business of operating a nightclub and a bar known as Norma Jean's Nightclub?
A Correct.
Q Okay. And they feature semi-nude and nude exotic dancers?
A That's one of the features, yes. P.15.

Q But you have exotic dancers?
A We do have exotic dancers, yeah.
Q Every night?
A Every night.
Q Okay. How many hours is that?
A From 12:00 p.m. 'til 2:00 a.m. in the morning. P. 19

Q And you have a lot of exotic dancers dancing?
A Yes.
Q Approximately how many?
A Hundreds. P.19

Q You have hundreds?
A Hundreds. Yeah. P.19-20

Q At what time --
A Right now we only have 30 girls tonight.
Q Thirty girls at one time?
A Tonight. At one time.
Q Okay.
A But we --
Q So -- so -- so you have 30 girls working as exotic dancers at one time?
A Yes. P. 20

Q But I mean at one time.
A Yeah. At one day, yes, 30 girls.
Q Okay.
A Forty girls.
Q And what are your hours of operation?
A 12:00 p.m. 'til 2:00 a.m. in the morning.
Q Okay. So you offer exotic dancing the whole time you're open?
A Um-hum.P.21

Q Now, when you answered that the entertainers that you hired were all ages, body types, and races, was it your testimony that the significant part was personality and people?
A Yeah. Those -- yeah. People skills is the main -- you know, that's what we hire people based on.
Q Um-hum.
A It's not even the main -- it's the only -- because that's how we keep people entertained, is positivity, nice attitude.
P.79

Q But the dancers are a draw, though, correct? They draw more customers than you would if you didn't have them, correct? That's why you have them?
A I mean -- yes. P. 34-35

Q So you use the dancers to make more money?
A Yes. P. 36

Q Are you familiar with the sale of alcohol or the volume of alcohol sold on any particular day at any particular week?
A There's a lot of alcohol. We sell a lot of alcohol. That's our primary source of income for the business. P.77

Q And the dancers, they don't benefit from any -- you say you guys sell a lot of liquor. They don't benefit --

A They don't benefit from the alcohol sale. P.85

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.15, P.19, P.20, P.21, P.34, P.35, P.36, P.77, P.79, P.85

9. Notwithstanding that Defendant paid Plaintiff nothing for her hours worked each week; Defendant made deductions from Plaintiff's pay by way of a daily $45 fee out of her tips to work at the Club and it doesn't matter what time the dancer comes to work, the $45 fee is mandated by Defendant to be paid by Plaintiff to Defendant. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

Q What's the charge to work at the club?
A It's -- there is no charge. There's a tip at the end of the night if you make $45 to pay to help keep the place clean. You know what I mean? It helps keep the lights on.
Q So it's a tip-out?
A Yeah. It's a tip.
Q For $40?
A Forty-five dollars.
Q Forty-five dollars.
A Yeah. It doesn't matter what time you get there – P.25

Q So who set the $45 tip out?
A That was just there when I got there. It was always $45.
Q Who told you about it?
A When I was hired. The guy who trained me, Mac. P.26-27

Q You instructed them to pay it? Someone instructed them?
A I tell people when they come in that if they make their money, they can pay a $45 tip-out. This is very common. It's a maintenance fee. We explain that when the girls are hired. P.28

Q Okay. Now, what you referred to a maintenance fee, define what that is related to. In other words -- strike that.
Explain where that money goes.
A Okay. Basically, it pays to clean the carpets, to re-stock soap and toilet tissue, paper towels, toiletries, lady products, ice machines, maintenance on repairing, you know, everything.

> Q Okay. So would you classify -- it is better classified as a cleaning fee?
> A Yeah. Cleaning fee. P.58-59
>
> Q Okay. Did you during your tenure rely on that Liquor Board handout while you were being trained by Mac?
> A Yes. Like I said, I carried it around with me quite a while.
> Q Okay. And did you ever ask the Liquor Board about the independent contractor language?
> A I didn't ask them, but we've had – you know, we've had no -- no one's ever had a problem with it before.P.80-81

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.25, P.26, P.27, P.28, P.58, P.59, P.80, P.81

In the August 9, 2013, Deposition of Lisa Ireland, President of PP&G, Inc., 30(b)(6) designee of Defendant PP&G, Inc. went like this:

> Q You stated that part of the money from the $45 goes to items like cleaning rugs and having pool tables re-surfaced?
> A No. Cleaning. The cleaning of the rugs, cleaning of the pool tables. The cleaning of the girls' dressing room.
> Q Okay. So it goes to cleaning of the facility?
> A The facilities they use. The girls use the pool tables. They entertain customers with pool tables. I know they appreciate the clean carpet. I would, if was a girl working in that environment. The lower you let a club go down, the less likely you are to have happy employees. P. 17-18

*Exhibit 2, August 9, 2013, Deposition of Lisa Ireland, President of PP&G, Inc., 30(b)(6) designee of Defendant PP&G, Inc.*, P. 17-18

10. Defendant has no record of ever paying wages to or otherwise compensating Plaintiff for work duties performed. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q The Defendant paid Plaintiff no wages for her hours worked?
> A No. P.37
> Q Okay. And Unique Butler, the Plaintiff, worked as an exotic dancer for the Defendant, and the Defendant never once paid Plaintiff any wages for work duties performed?
> A See, when we started like --
> Q That's a yes or no. You never paid her any --
> A No. Independent contractors don't get paid. P.16

Q Okay. Defendant has no record of ever paying wages or otherwise compensating Plaintiff for work duties performed? You never paid her wages?
A Never paid her, no. P.22

Q Okay. And you don't have a sign-in and sign-out sheet that shows that she's worked?
A No. Girls come and go as they please.
Q So you don't keep track of the number of hours they work?
A No. P.45

Q And where are their work schedules?
A We don't have work schedules for contractors. P.46

All right. So how many of your dancers are considered employees?
A None have -- none chose to be employees so far.
Q So you don't have any schedule or anything showing the number of hours or what day she worked in 2009?
A They're completely -- you know, if they're independent contractors --
Q You can answer the question yes or no.
A No. P.46

Q What about for 2010?
A No. P.46-47

Q What about for 2011?
A No.
Q What about for 2012?
A No.
Q What about sheets for fines?
A No.
Q What about sheets for tip-outs or tip-ins?
A No. P.47

Q So you're saying that none of the dancers have chosen to be employees?
A To date, no. P.47

Q Do you keep records?
A No. You mean, records of what?
Q Of the tip-out collected?
A No.
Q So who do they give it to?
A There's a bartender, and she just, you know, collects it, puts it in an envelope. That's it.
Q And she doesn't put who pays or anything?
A No.
Q So why would anybody pay?

> A They make lots of money. They want the place to stay open.P.27
>
> Q You're saying they want the place to stay open, and if they don't pay it, then the place won't stay open.
> A I mean, I don't think so. I think people are going to pay. It's fine. We make our money off liquor. P.28

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.16, P.22, P.27, P.28, P.37, P.45, P.46, P.47

11. Defendant's gross income was more than $500,000 for the years, 2009, 2010, 2011, 2012.

"Items 37 thru 40 now collectively read, 'The Defendant admits it's gross Income for the years 2009, 2010, 2011, and 2012 was over $500,000 before deductions of any sort.'" *Exhibit 3, Amendment to Defendants Response to Plaintiff's First Request for Admission to Defendant.*

12. Plaintiff never signed a document authorizing Defendant to take deductions for the cost of NORMA JEAN'S NITE CLUB. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Plaintiff never signed a document authorizing Defendant to take deductions for the cost of Norma Jean's Nightclub, correct?
> A No. P.37

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.37

13. Defendant did not rely on any U.S. Department of Labor Opinion in your decision not to pay Plaintiff wages as required by law. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Defendant did not rely on any U.S. Department of Labor opinion in your decision not to pay Plaintiff wages as required by law?
> A I don't understand this question.
> Q You didn't rely on any cases or any laws or opinions by the U.S. Department of Labor?
> A Not myself, no. P.37

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.37

14. Defendant did not rely on any Maryland Department of Labor Opinion in your decision not to pay Plaintiff wages as required by law. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q You did not rely on any Maryland Department of Labor opinion? The last question was U.S. This one is Maryland.
> A Okay.
> Q In your decision not to pay wages as required --
> A No, not myself personally.

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.37

15. Defendant did not rely on any 4th Circuit Court Opinion in your decision to not to pay Plaintiff wages as required by law. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Okay. And Defendant did not rely on any Fourth Circuit Court opinion in your decision not to pay Plaintiff wages as required by law, correct?
> A (Nodding head.)

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.38

16. Defendant did not rely on any Maryland Court Opinion in your decision not to pay Plaintiff wages as required by law. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Okay. Defendant did not rely on any Maryland Court opinion in your decision not to pay Plaintiff wages as required by law?
> A No.P.38

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.38

17. Defendant cannot produce any documented evidence that it relied on any legal opinion, Department of Labor Opinion, or other written guidance to mitigate its failure to pay wages as required by law. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Defendant cannot produce any document or evidence that it relied on any legal opinion, Department of Labor opinion, or other written guidance to mitigate its failure to pay wages as required by law? You can't rely on any legal authority or opinion, any Department of Labor opinion, or other written guidance to mitigate its failure to pay – your failure to pay wages as required by law?
> A No.P.38-39

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.38-39

18. Miss Butler never authorized in writing for the Defendant to make deductions from her wages? In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Okay. Miss Butler never authorized in writing for the Defendant to make deductions from her wages?
> A No.P.39

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.39

**III. STANDARD OF REVIEW**

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary

judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask [herself] not whether [s]he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley,* 404 F.3d 243, 246-247 (4th Cir.2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW.,* 187 F.3d 415, 422 (4th Cir.1999)). Rule 56(e) also requires that "affidavits submitted by the party defending against a summary judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'" *Id.* (quoting 10B Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 3d § 2740, at 399 (1998)). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson,* 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md.2001) (citations omitted). Furthermore, a party cannot create a genuine issue of fact

through mere assertions. *Abcor Corp. v. AM Int'l, Inc.,* 916 F.2d 924, 929 (4th Cir.1990). Rather, to resist summary judgment, courts require that the opposing party adduce "specific, nonspeculative evidence..." *See, e.g., Bouchat v. Balt. Ravens Football Club,* 346 F.3d 514, 526 (4th Cir.2003). Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir.1993) (quoting *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987)). As set forth below, even when viewing all facts in a light most favorable to Defendant, Partial Summary Judgment as to liability must be granted in favor of Plaintiff.

## IV. ARGUMENT

### A. Plaintiff Was At All Times an Employee of Defendant and Was Never an Independent Contractor.

Defendant's lone cognizable defense in this case is that Plaintiff should be regarded as an independent contractor and not an employee. Such classification is plainly contrary to law. The FLSA defines an employee as "any individual employed by an employer," 29 U.S.C. 203(e), and defines "employ" as "to suffer or permit to work." 29 U.S.C. 203(g). Courts have repeatedly recognized that the definition of "employee" under the FLSA must be given an expansive interpretation. *See United States v. Rosenwasser*, 323 U.S. at 362-63 ("A broader or more comprehensive coverage of employees . . . would be difficult to frame."). *See also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. at 326 (emphasizing the "striking breadth" of the FLSA's definition of "employ"). Thus, common law concepts of "employee" and "independent contractor" are not controlling in determining coverage under the FLSA. *See Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). Rather, courts must look to the "economic reality" of the relationship between the worker and employer to decide whether

FLSA coverage exists. *Id.* Employees are those who, as a matter of economic reality, are dependent upon the business to which they render service, *see Bartels v. Birmingham*, 332 U.S. 126, 130 (1947), and are not in business for themselves. *See Baker,* 137 F.3d at 1443.

It is well settled that the mere fact that workers are labeled "independent contractors" does not negate the application of the economic realities test. *See Rutherford Food Corp.,* 331 U.S. at 729 ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]."); *see also Heath v. Perdue Farms, Inc.,* 87 F.Supp.2d 452, 457 (D.Md.2000) (quoting *Rutherford* for the proposition that "[c]ourts look not to the label, but to the underlying 'economic reality' of the relationship" in determining whether a worker is an independent contractor or employee under the FLSA). To further drive this point home, the Supreme Court articulates, "the purposes of the [FLSA] require that it be applied even to those who would decline its protections .... [otherwise] employers might be able to use superior bargaining power to coerce employees ... to waive their protections under the [FLSA]." *Tony and Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 302 (1985).

Courts have established a six-factor test to determine whether a worker is an employee or an independent contractor, based on "economic reality."[4] These factors, derived from *United States v. Silk*, 331 U.S. 704 (1947), are: (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his

[4] The determination of "employee" status under the FLSA is a question of law, although it depends on subsidiary factual determinations. Employee status can be determined by the district court on a motion for summary judgment where there are no genuine disputes of material fact. *See Hopkins v. Cornerstone America,* 545 F.3d 338, 343–46 (5th Cir.2008) (upholding district court's summary judgment determination that workers were employees).

employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business. *Schultz v. Capital Intern. Sec., Inc.,* 466 F.3d 298, 304-05 (4th Cir. 2006). No single factor is dispositive, as "the test is designed to capture the economic realities of the relationship between the worker and putative employer." *Id.* at 305. "[T]he final and determinative question must be whether the total[ity] of the [circumstances considered] establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA or are sufficiently independent to lie outside its ambit." *Usery v. Pilgrim Equip. Co.,* 527 F.2d 1308, 1311–12 (5th Cir.1976).

Finally, many federal courts have found that exotic dancers are employees under FLSA when applying the six factor test in similar contexts. See, e.g., Thompson, 779 F. Supp. 2d at 151 (finding that exotic dancers were employees under the FLSA and under applicable state labor laws); Clincy, 808 F. Supp. 2d at 1350 (same); Morse v. Mer Corp., No. 08-1389, 2010 WL 2346334, at *6 (S.D. Ind. June 4, 2010) (same); Reich, 998 F.2d at 329 (affirming the district court's holding that the exotic dancers were employees under the protection of the FLSA); Thornton v. Crazy Horse, Inc., No. 06-251, 2012 WL 2175753, at *16 (D. Ak. June 14, 2012) (finding that an adult entertainment club was liable to dancers for withholding minimum wages).

***1. Control***

At all times while Plaintiff worked as exotic dancer for Defendant, Defendant controlled every aspect of Plaintiff's work relationship with Defendant. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

Q Did you have the ability to discipline the Plaintiff by taking her off the schedule? Either you had the ability or you --
A Yes. P. 23-24

Q Okay. So you set the club rules and standards for who could and could not be hired and work for Norma Jean's Nightclub?
A Yes. P. 24

Q The Defendant is responsible for advertising, location, business hours, maintenance of facility, aesthetics, and inventory of beverages and food?
A Yes. There's no food. P.30

Q At all times, the Plaintiff was wholly dependent on the Defendant to provide a facility, as well as amenities to perform her job duties while working at Norma Jean's Nightclub?
A Yes. P.33

Q Okay. The Plaintiff's employment with Defendant was dependent on Defendant's financial savvy and business know-how to keep Defendant's business financially sound so as to keep the doors open and afford Plaintiff the opportunity to work at Norma Jean's Nightclub?
A Yes. P.33

Q And what was the paramount issue used in your determination to hire an independent contractor?
A Well, when I contract dancers, I'm mostly looking for attitude. You know, positive attitude. You know what I mean? Someone who makes you feel comfortable. Just like, you know -- that's all. P.72

Q Okay. The Defendant did not require any level of education or previous certification such as by way of example completion of a pole dance class to work at Norma Jean's Nightclub?
A No skill was necessary. No skill was required. P.33

Q Okay. Did you during your tenure rely on that Liquor Board handout while you were being trained by Mac?
A Yes. Like I said, I carried it around with me quite a while.
Q Okay. And did you ever ask the Liquor Board about the independent contractor language?
A I didn't ask them, but we've had – you know, we've had no -- no one's ever had a problem with it before.P.80-81

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.23, P.24, P.30, P.33, P.72

Whether a worker is properly considered an "employee" or an "independent contractor" is not a matter of designation by the putative employer or even agreement between the parties. It is well settled that the mere fact that workers are labeled "independent contractors" does not negate the application of the "economic realities" test. *See Rutherford Food Corp. v. McComb,* 331 U.S. 722, 729 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]."). Given the above undisputed facts from Defendant's 30(b)(6) designee, Defendant exercised substantial control over every aspect of Plaintiffs' employment. . In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Now, when you answered that the entertainers that you hired were all ages, body types, and races, was it your testimony that the significant part was personality and people?
> A Yeah. Those -- yeah. People skills is the main -- you know, that's what we hire people based on.
> Q Um-hum.
> A It's not even the main -- it's the only -- because that's how we keep people entertained, is positivity, nice attitude.
> P.79

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.79

Defendant's 30(b)(6) designee boldly stated that "No skill was necessary. No skill was required" to be a dancer a Defendant's club. *Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.33. Where putative employers provide specific direction regarding the way in which workers, particularly low-skilled ones, are to perform their jobs, courts have weighed the control factor in favor of employee status. *See Heath* 87 F.Supp.2d at 457-58 (favoring employee status where employer published a training

manual outlining all aspects of the work to be done by chicken catchers, and crew leaders provided continual on-site feedback); *see also Schultz*, 466 F.3d at 307 (favoring employee status where a standard operating procedure governed how security guards were to carry out their duties). In no uncertain terms, Defendant exercised substantial control over every aspect of Plaintiffs' employment at NORMA JEAN'S NITE CLUB.

In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Did you have the ability to discipline the Plaintiff by taking her off the schedule? Either you had the ability or you --
> A Yes. P. 23-24
>
> Q Okay. So you set the club rules and standards for who could and could not be hired and work for Norma Jean's Nightclub?
> A Yes. P. 24

Defendant had the ability to discipline Plaintiff by taking her off the schedule. Defendant set club rules and standards for who could and could not be hired to work at NORMA JEAN'S NITE CLUB. It is clear that, even upon viewing the evidence in the light most favorable to Defendant, the Court must conclude that Defendant exercised a significant degree of control over Plaintiff's work.

***2. Opportunity for Profit or Loss and Investment in the Business***

Defendant admits that Plaintiff does not have the opportunity for even minimal loss. Defendant states that when a dancer "has not earned enough to pay the maintenance fee [charged to dancers by Defendant], then it shall be waived without a fine, penalty or sanction of any kind." ECF No. 12-1 at 3.

At no time while Plaintiff worked as an exotic dancer for Defendant did Plaintiff

enjoy any opportunity for profit or loss and was dependent on the financial success of the NORMA JEAN'S NITE CLUB. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q She didn't have the opportunity to enjoy in the profit or loss of the business of Norma Jean's Nightclub?
> A No. P. 17-18
>
> Q The Plaintiff has not invested money into Norma Jean's Nightclub?
> A No.
> Q And the Plaintiff doesn't hold any membership or ownership interest in Norma Jean's Nightclub?
> A No.
> Q And the Plaintiff's earnings at Norma Jean's Nightclub came only from her tips?
> A Yes. P. 30
>
> Okay. Now, the Defendant, PP&G, Inc., was solely responsible for any investments in the business; is that correct?
> A Correct.
> Q Did the entertainers as independent contractors share in the profits of --
> A Say that one more time. I'm sorry.
> Q Yes, sir. As entertainers who were independent contractors, did they share in the profits of the business?
> A No. P.73

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.17, P.18, P.30, P.73.

At no time while Plaintiff worked as an exotic dancer for Defendant did Plaintiff ever make a financial investment in the Club. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q The Plaintiff has not invested money into Norma Jean's Nightclub?
> A No.
> Q And the Plaintiff doesn't hold any membership or ownership interest in Norma Jean's Nightclub?
> A No.
> Q And the Plaintiff's earnings at Norma Jean's Nightclub came only from her tips?
> A Yes. P. 30

> Okay. Now, the Defendant, PP&G, Inc., was solely responsible for any investments in the business; is that correct?
> A Correct.
> Q Did the entertainers as independent contractors share in the profits of --
> A Say that one more time. I'm sorry.
> Q Yes, sir. As entertainers who were independent contractors, did they share in the profits of the business?
> A No. P.73

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.30, P.73.

Plaintiff has not invested in Defendant nor does Plaintiff hold any membership or ownership interest in Defendant. Plaintiffs' earnings came only from her tips. The ability of an exotic dancer to entice her customers to give large tips is known in the industry as "hustling." *See Harrell v. Diamond A Entm't, Inc.,* 992 F.Supp. 1343,1350–52 (M.D.Fla.1997). Courts have rejected the relevance of the "hustling" argument to the opportunity for profit or loss factor of the economic reality test, finding that the appropriate inquiry "has more to do with relative investments, with control over larger aspects of the business, and with like forms of initiative." *Id.* As the Fifth Circuit explained in *Reich v. Circle C. Investments, Inc.,* "once customers arrive at [the club], a dancer's initiative, hustle, and costume significantly contribute to the amount of her tips. But [the club's owner] has a significant role in drawing customers to its nightclub[ ].... [The owner] is responsible for advertisement, location, business hours, maintenance of facilities, aesthetics, and inventory of beverages and food." 998 F.2d at 328 (concluding that the dancers "are far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments.").

Other courts have recognized the limited opportunities for exotic dancers to realize profit. See Reich v. Circle C. Invs., Inc., 998 F.2d 324, 328 (5th Cir. 1993) (finding the employer "has a significant role in drawing customers to its nightclubs" and thus, "the dancers are far more

closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments") (internal citations omitted).

Defendant also implicitly acknowledges that dancers do not invest in the equipment needed for the facility. While Defendant requires all its dancers to pay a "maintenance fee" because "they use all of the facilities as an 'Entertainer,'" Defendant states that the maintenance fee is applied to the cleaning of the night club rather than any sort of investment in the property or the business. ECF No. 12-2 at 3. See Clincy v. Galardi S. Enters., Inc., 808 F. Supp. 2d 1326, 1346 (N.D. Ga. 2011) (noting that plaintiffs "do not make any capital investment in Defendant's facilities, advertising, maintenance, security, staff, sound system and lights, food beverage . . . the courts which have addressed this factor have universally concluded that a dancer's investment is minor when compared to the club's investment") (citations omitted).

Further, it is well established that courts look at the opportunity for profit or loss as the amount realized by a business over and above capital investment. *See Brock v. Mr. W Fireworks. Inc.*, 814 F.2d 1042, 1050-51 (5th Cir.), *cert. denied*, 484 U.S. 924 (1987); *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1371-72 (9th Cir. 1981), (The focus upon who controls the major determinants of profit and who exercises the managerial skills on which profit or loss depend.) *see also Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1294 (3rd Cir. 1991); *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 328 (5th Cir. 1993). Profit realized from capital expenditure or managerial skills is distinguishable from increased earnings due to industry and efficiency. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) ("While profits to the boners depended upon the efficiency of their work, it was more like piecework than an enterprise that actually depended for success upon the initiative, judgment or foresight of the typical independent contractor."). Here, as stated above, Plaintiff's income was based wholly on receipt

of tips from Defendant's customers and Plaintiff was not afforded an opportunity for gain or loss over and above Defendant's capital investment.

Finally, this factor requires the Court to consider Plaintiff's investment in Defendant's business. In making the investment finding under the "economic reality" test, "it is appropriate to compare the worker's individual investment to the employer's investment in the overall operation." *Baker*, 137 F.3d at 1442. In weighing the relative investments of a worker and an alleged employer, courts must consider "the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself." *Dole v. Snell*, 875 F.2d 802, 810 (10th Cir. 1989).

Upon applying a relative investment analysis to the instant case, it is clear that a reasonable fact-finder would regard Plaintiff's investment non-existent or, at worst, *minimis* compared to Defendant's business-specific investments. *See Mr. W Fireworks. Inc.*, 814 F.2d at 1047 (fire stand operator's use of a computer did not involve an investment because he had originally purchased the computer for schoolwork). Indeed, in *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 304 (5th Cir. 1998) the Fifth Circuit concluded that the relative investment factor weighed in favor of employee status, notwithstanding that workers owned or leased their work vehicles. The court noted that "[a]lthough the driver's investment of a vehicle is no small matter, that investment is somewhat diluted when one considers that the vehicle is also used by most drivers for personal purposes." *Id.* As such, this factor weighs strongly in favor of employee status.

3***. Degree of Skill and Independent Initiative Required***

Many other courts have previously found that little specialized skill is required to be a nude dancer. *See, e.g.*, *Morse*, 2010 WL 2346334, at *5; *Harrell*, 992 F. Supp. at 1351; *Circle C*

*Invs.*, 998 F.2d at 328. Defendant cannot even argue that nude dancing that reaches the level of high art, requiring extensive skill, training, and expertise because nothing in the record indicates that "artistic ability" had anything to do with eligibility to dance at the club.

Defendant concedes that Plaintiff's position did not require any "special skill." Defendant states that the entertainers are not required to take dancing classes because the primary considerations when hiring dancers are the "personality" and "presence" of the individual. ECF No. 12 at13. Lastly, while Defendant argues that "Plaintiff alone is not an integral part of the Defendant's business," it admits that the entertainers/dancers "collectively were an integral part of the Defendant's business." Id. at 14. See Thompson, 779 F. Supp. 2d at 151 (quoting Morrison v. Int'l Programs Consortium, Inc., 253 F.3d 5, 11 (D.C. Cir. 2001)) (holding [t]he Court's inquiry, however, focuses on 'the extent to which the work is an integral part of the employer's business,' not on the role of the employee individually").

In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. succinctly explained the relevant qualifications for performing at the club and the deposition went like this:

> Q Now, when you answered that the entertainers that you hired were all ages, body types, and races, was it your testimony that the significant part was personality and people?
> A Yeah. Those -- yeah. People skills is the main -- you know, that's what we hire people based on.
> Q Um-hum.
> A It's not even the main -- it's the only -- because that's how we keep people entertained, is positivity, nice attitude.
> P.79

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.79

Defendant's 30(b)(6) designee boldly stated that "No skill was necessary. No skill was required" to be a dancer a Defendant's club. *Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.33. There was no particular skill required of Plaintiffs. *See Heath,* 87 F.Supp.2d at 458 (noting that even where the [workers'] position required generalized supervision and management skills, such additional considerations did not render them independent contractors). Plaintiffs' job required them to dance in various stages of undress for Defendants' patrons. The only job qualification – beyond the willingness to disrobe in a public setting – was that the dancer has a positive attitude. *Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.79 This was not a high skill job. *See Heath.* at 458 (noting that a chicken catcher's ability to become faster with experience "is true of most repetitive tasks, skilled or unskilled").

Given the above statement of the Defendant in this case, Plaintiff possessed no specialized skill necessitating a prolonged analysis of this factor. Defendant did not require any level of education or previous certification (such as, by way of example, completion of a pole dance class) Many other courts have previously found that little specialized skill is required to be a nude dancer. *See, e.g., Morse*, 2010 WL 2346334, at *5; *Harrell*, 992 F.Supp. at 1351; *Circle C Invs.*, 998 F.2d at 328. As such, the Court must conclude that the lack of specialized skills required for Plaintiff's job weighs in favor of the Plaintiff's employee status.

***4. Permanence or Duration of the Working Relationship***

Plaintiff worked for Defendant for 2008-2012. However, many courts, however, have found exotic dancers to be employees under the FLSA, despite finding that the employment relationship lacked a high degree of permanence. *See Circle C. Invs.*, 998 F.2d at 328–29 ("The

transient nature of the work force is not enough here to remove the dancers from the protections of the FLSA.").

***5. Integral Part of the Employer's Business***

The Defendant cannot challenge the self-evident conclusion that nude dancers formed an integral part of Norma Jean's Nightclub business. At all times while Plaintiff worked as exotic as an dancer for Defendant, Plaintiff' work-related services were an integral part of Defendant's business. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q I said: The Defendant is in the business of operating a nightclub and a bar known as Norma Jean's Nightclub?
> A Correct.
> Q Okay. And they feature semi-nude and nude exotic dancers?
> A That's one of the features, yes. P.15.
>
> Q But you have exotic dancers?
> A We do have exotic dancers, yeah.
> Q Every night?
> A Every night.
> Q Okay. How many hours is that?
> A From 12:00 p.m. 'til 2:00 a.m. in the morning. P. 19
>
> Q And you have a lot of exotic dancers dancing?
> A Yes.
> Q Approximately how many?
> A Hundreds. P.19
> Q You have hundreds?
> A Hundreds. Yeah. P.19-20
>
> Q At what time --
> A Right now we only have 30 girls tonight.
> Q Thirty girls at one time?
> A Tonight. At one time.
> Q Okay.
> A But we --
> Q So -- so -- so you have 30 girls working as exotic dancers at one time?
> A Yes. P. 20

Q But I mean at one time.
A Yeah. At one day, yes, 30 girls.
Q Okay.
A Forty girls.
Q And what are your hours of operation?
A 12:00 p.m. 'til 2:00 a.m. in the morning.
Q Okay. So you offer exotic dancing the whole time you're open?
A Um-hum.P.21

Q Now, when you answered that the entertainers that you hired were all ages, body types, and races, was it your testimony that the significant part was personality and people?
A Yeah. Those -- yeah. People skills is the main -- you know, that's what we hire people based on.
Q Um-hum.
A It's not even the main -- it's the only -- because that's how we keep people entertained, is positivity, nice attitude.
P.79

Q But the dancers are a draw, though, correct? They draw more customers than you would if you didn't have them, correct? That's why you have them?
A I mean -- yes. P. 34-35

Q So you use the dancers to make more money?
A Yes. P. 36

Q Are you familiar with the sale of alcohol or the volume of alcohol sold on any particular day at any particular week?
A There's a lot of alcohol. We sell a lot of alcohol. That's our primary source of income for the business. P.77

Q And the dancers, they don't benefit from any -- you say you guys sell a lot of liquor. They don't benefit --
A They don't benefit from the alcohol sale. P.85

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.15, P.19, P.20, P.21, P.34, P.35, P.36, P.77, P.79, P.85

Given the above undisputed facts, NORMA JEAN'S NITE CLUB is a nightclub that features nude exotic dancers from 12pm to 2am everyday with at least 30 girls a day working and they use the dancers as a marketing/entertainment campaign to make more money selling

alcohol. As such, Defendant must concede that Plaintiff perform a duty that is central and integral to Defendant's business. It is well established that where workers play a crucial role in a company's operation, the workers are likely to be employees. *See Rutherford Food*, 331 U.S. at 725 (boners are employees because activities are part of a series of interdependent steps, none of which was possible without the others); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1061 (2d Cir. 1988) (nurses are employees because "[t]heir services are the most integral part of Superior Care's operation"). As the Third Circuit stated in *Donovan v. DialAmerica Mktg.*, 757 F.2d 1376, 1385 (3d Cir.), *cert. denied*, 474 U.S. 919 (1985),"regardless of the amount of work done, workers are most likely to be 'employees' under the FLSA if they perform the primary work of the alleged employer." As a consequence, this factor weighs heavily in favor of employee status.

***6. Consideration of All Factors***

Given the 30(b)(6) testimony and in analyzing all the factors, it is proper to consider Court holdings in other cases involving exotic dancers where the Court faced a decision of adjudicating dancers as employees or contractors. In these other similar cases, courts have consistently determined that exotic dancers are properly considered "employees" for purposes of the FLSA and equivalent state statutes. *See Thompson v. Linda and A Inc.*, 2011 WL 1602337 (D.D.C. 2011) (The United States District Court for the District of Columbia, relying heavily on similar cases, common sense, and the analysis used herein, concluded that dancers were employees covered by Federal and District of Columbia Wage Laws); *Harrell v. Diamond A. Entertainment, Inc.*, 992 F.Supp. 1343 (M.D. Fl. 1997), (The Court held that the dancer was an employee covered by the FLSA); *Reich v. Circle C. Investments, Inc.* 998, F.2d. 324 (5th Cir.1993), (The Court confirmed that the topless dancers at the "Lipstick" and "Crazy Horse Saloon" nightclubs owned by the defendant were employees under the FLSA after defendants

appealed a judgment in favor of the plaintiffs); *Chaves v. King Arthur's Lounge, Inc.,* Case No. 07-2505 (Sup. Ct. Mass.2009), (The Court found the dancers to be employees and not independent contractors under Federal and Massachusetts Wage Laws); and *Roberts v. Bomarto Ent., Inc*., 956 P.2d. 254(1998) (Dancers, through the state commissioner of labor and industries, sued a club called Jiggles for violating the Oregon minimum wage law. The Court affirmed the trial court's decision that the club suffered and permitted the dancers to work, and therefore employed these individuals.).

In considering the foregoing in its totality, it is clear that Plaintiff was, at all times relevant to this litigation, an employee of Defendant and was never an independent contractor. As such, Defendant, as Plaintiff's employer, was obligated to pay Plaintiff's wages for hours worked as required by Federal and Maryland law. As set forth *infra*, Defendant failed, as a matter of law, to pay Plaintiff's wages as required by the FLSA.

**B. Defendant Failed to Pay Plaintiffs Wages at Least Equal to the Federal Minimum Wage.**

Section 206(a)(1) of the FLSA provides that no employer shall employ any employee for an hourly wage of less than the Federal Minimum Wage. As set forth above, at all times relevant to this litigation, Plaintiffs were "employees" covered by the FLSA, 29 U.S.C. § 206(a)(1), and Defendant was their "employer." An employer who violates the FLSA minimum wage provisions is ordinarily "liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). This award of liquidated damages is mandatory unless "the employer shows to the satisfaction of the court that the act or omission giving rise [to the FLSA action] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation

of the [FLSA].” 29 U.S.C. § 260. This good faith defense to liquidated damages requires “an affirmative showing of a genuine attempt to ascertain what the law requires,” not simply the absence of bad faith. *Danesh v. Rite Aid Corp*., 39 F. Supp. 2d 7, 13 (D.D.C. 1999) (citation omitted).

Defendant cannot produce any documented evidence that it relied on any legal opinion, Department of Labor Opinion, or other written guidance to mitigate its failure to pay wages as required by law. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Defendant cannot produce any document or evidence that it relied on any legal opinion, Department of Labor opinion, or other written guidance to mitigate its failure to pay wages as required by law? You can't rely on any legal authority or opinion, any Department of Labor opinion, or other written guidance to mitigate its failure to pay – your failure to pay wages as required by law?
> A No.P.38-39

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.38-39

In the instant case, Defendant cannot demonstrate good faith and reasonable grounds for its failure to pay Plaintiff wages as required by the FLSA. Defendant has not and cannot provide any evidence that it relied on any legal advice, Department of Labor Opinion, or other guidance to mitigate its failure to pay wages as required by law. In truth, Defendant did not make any good faith attempt to learn how to pay Plaintiff’s wages in accordance with applicable law. Thus, it is clear that no good faith defense exists that Defendant can argue or otherwise submit for failing to pay Plaintiff properly for hours worked. As a consequence, this Court must find as a matter of law that Defendant is required to pay liquidated damages in an equal amount to the unpaid wages Plaintiff will be entitled to collect.

As such, Defendant, as Plaintiffs' employer, was obligated to compensate Plaintiffs for all hours worked at an hourly rate not less than the Federal Minimum Wage (Defendant does not dispute for work performed on or after July 24, 2009, the Federal Minimum Wage was $7.25 per hour). Obviously, the Defendant never complied either with the statute pertaining to required record keeping or to the clear guidance by the Department of Labor of how to calculate the minimum wage for employees who are paid tips by the employer's customers. See U.S. Dept. of Labor, Wage and Hour Div., Fact Sheet # 15, Tipped Employees Under the Fair Labor Standards Act, available at http://www.dol.gov/whd/regs/compliance/whdfs15.htm. Instead, the Defendant put all its eggs in the basket of insisting that the dancers were independent contractors to whom it did not owe the legal duties due an employee.

While Plaintiff worked as an exotic dancer for Defendant, Defendant never once paid Plaintiff any wages for work duties performed. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Okay. And Unique Butler, the Plaintiff, worked as an exotic dancer for the Defendant, and the Defendant never once paid Plaintiff any wages for work duties performed?
> A See, when we started like --
> Q That's a yes or no. You never paid her any --
> A No. Independent contractors don't get paid. P.16
>
> Q Okay. Defendant has no record of ever paying wages or otherwise compensating Plaintiff for work duties performed? You never paid her wages?
> A Never paid her, no. P.22
> Q The Defendant paid Plaintiff no wages for her hours worked?
> A No. P.37

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.16, P.22, P.37

In this case, it is undisputed that Defendant paid Plaintiff no wages for hours worked. Notwithstanding this fact, it is foreseeable that Defendant may attempt to manufacture an

argument that Defendant provided Plaintiff with a non-monetary benefit that the Court should regard as compensation equaling or exceeding the Federal Minimum Wage. Such an argument, if made, is false, disingenuous, and would be argued in bad faith.

Under the FLSA, "wages" may include both actual paid wages and "the reasonable cost to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employee." 29 U.S.C. § 203(b). The Code of Federal Regulations requires "an employer who makes deductions from the wages of employees for 'board, lodging, or other facilities ... shall maintain and preserve records substantiating the cost of furnishing each class of facility." 29 C.F.R. § 516.27(a). It is the burden of the party claiming to have utilized the deduction or credit to prove the reasonable cost of the benefit by producing records or other credible evidence. *See Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 474 (11th Cir.1982). Courts, including this one, have found that where defendants have produced no records concerning the costs of facilities, they forfeit the ability to deduct the cost of the facilities. *See Fields v. Luther,* 1988 WL 59963 at *15 (D.Md.1988) (farm labor contractor not permitted to deduct gas and electricity from workers' wages where the only evidence presented as to cost of utilities was the average monthly benefits); *see also Jones v. Way of Hope, Inc.*, 2009 WL 3756843, (D.Md. Nov. 6, 2009); *Marroquin v. Canales,* 505 F.Supp.2d 283, 292-93 (D.Md.2007).

Defendant has no record of ever paying wages to or otherwise compensating Plaintiff for work duties performed. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q The Defendant paid Plaintiff no wages for her hours worked?
> A No. P.37

Q Okay. And Unique Butler, the Plaintiff, worked as an exotic dancer for the Defendant, and the Defendant never once paid Plaintiff any wages for work duties performed?
A See, when we started like --
Q That's a yes or no. You never paid her any --
A No. Independent contractors don't get paid. P.16

Q Okay. Defendant has no record of ever paying wages or otherwise compensating Plaintiff for work duties performed? You never paid her wages?
A Never paid her, no. P.22

Q Okay. And you don't have a sign-in and sign-out sheet that shows that she's worked?
A No. Girls come and go as they please.
Q So you don't keep track of the number of hours they work?
A No. P.45

Q And where are their work schedules?
A We don't have work schedules for contractors. P.46

All right. So how many of your dancers are considered employees?
A None have -- none chose to be employees so far.
Q So you don't have any schedule or anything showing the number of hours or what day she worked in 2009?
A They're completely -- you know, if they're independent contractors --
Q You can answer the question yes or no.
A No. P.46

Q What about for 2010?
A No. P.46-47

Q What about for 2011?
A No.
Q What about for 2012?
A No.
Q What about sheets for fines?
A No.
Q What about sheets for tip-outs or tip-ins?
A No. P.47

Q So you're saying that none of the dancers have chosen to be employees?
A To date, no. P.47

Q Do you keep records?
A No. You mean, records of what?
Q Of the tip-out collected?

A No.
Q So who do they give it to?
A There's a bartender, and she just, you know, collects it, puts it in an envelope. That's it.
Q And she doesn't put who pays or anything?
A No. P.27

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.16, P.22, P.27, P.37, P.45, P.46, P.47

The Defendant, having never created the records in the first place, has nothing upon which it could premise any contention that it complied with the law pertaining to employees who receive tip income. Defendant does not even have a sign in book showing the days that the Plaintiff and other dancers worked. Confronted with the situation, the courts' answer has been clear: an employee, due a minimum wage, cannot be denied it because of an employer's failure to maintain records. Instead, the employee's reasonable estimate of the hours worked will suffice. The seminal case concerning actions brought for unpaid wages or overtime compensation when records are not available is Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946). In Mt. Clemens, the Supreme Court set out that an employee bringing suit "has the burden of proving that he performed work for which he was not properly compensated." 328 U.S. at 687. However,

> where the employer's records are inaccurate or inadequate . . . [t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty. . . .

Id. Rather, the Court held that,

> [i]n such a situation . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work *as a matter of just and*

> *reasonable inference*. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. *If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate*.

Id. at 687-88 (emphasis added).

Defendants "did not maintain proper payroll records pursuant to their obligations under 29 U.S.C. § 211(c) (2006)," and therefore the court must "approximate damages under the FLSA based on 'just and reasonable' inferences." Ventura v. Bebo Foods, Inc. 738 F. Supp. 2d 8, 13 (D.D.C. 2010) (quoting Anderson, 328 U.S. at 686-88). "When assessing damages under the Anderson standard, a court may draw inferences from oral testimony, sworn declarations, and whatever relevant documentary evidence a plaintiff is able to provide." Id. (internal citation omitted). Defendant can point to no authority or good faith basis that they relied upon to determine why they legally chose not to pay their dancers. Defendant has not provided any evidence that they relied on any legal advice or other guidance as to how to pay their dancers. Defendants did not make a good faith attempt to learn how to pay their dancers in accordance with applicable law. There is no good faith defense that Defendant can raise for failing to pay their dancers; thus, Defendant should be required to pay liquidated damages on all unpaid minimum wages for each Plaintiff.

In this case, Defendant simply cannot argue that it is entitled to benefit from a deduction or credit argument because Defendant maintained no records to prove the reasonable cost of any alleged non-monetary benefit it now contends constitutes wages paid to Plaintiff. Ms. Butler never authorized in writing for the Defendant to make deductions from her wages. In the August

9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Okay. Miss Butler never authorized in writing for the Defendant to make deductions from her wages?
> A No.P.39

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.39

Further, it is undisputed that Plaintiffs never signed a document authorizing Defendant to take deductions for the cost of the NORMA JEAN'S NITE CLUB facility. To such obvious failures, Defendant may suggest that Plaintiffs' awareness and acceptance of such alleged employment benefits entitled Defendant to deduct (or credit) the value of the benefits allegedly provided to Plaintiffs. Such an argument cannot legally be made. The FLSA's protections are construed strictly and Defendant's failure to obtain written authorization from Plaintiffs or to maintain documentation showing deductions from their (non-existent) wages necessarily precludes Defendant from crediting or deducting the act of providing a facility for Plaintiffs to dance in as wages paid to Plaintiffs. *See, e.g., Marroquin*, 505 F.Supp.2d. at 292-93 (collecting authority supporting the proposition that an employer is not entitled to offset wages by lodging or board when it fails to maintain and preserve requisite documentation); *Jones*, 2009 WL 3756843 at *3 ("The failure to document the amount, the failure to obtain written authorization from Jones, and the failure to include detailed documentation on the amount of room and board all preclude the Defendants from counting room and board within the wages paid to [Plaintiff].").

If the Court is inclined to forgive Defendant for its failure to document the cost of the "facilities" or "advantages" allegedly provided to Plaintiff, the law still will not allow Defendant to benefit from an offset or credit for alleged non-monetary payments to Plaintiff. Indeed, the

rejection of Defendant's counsel's argument of "facilities" or "advantages" as wages lies in the clear language of the United States Department of Labor in 29 C.F.R. 531.32 (c)[5] as follows:

> *[T]he cost of furnishing "facilities" which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages.* Items … which have been held to be primarily for the benefit or convenience of the employer and are not therefore to be considered "facilities" … include: Safety caps, explosives, and miners' lamps (in the mining industry); electric power (used for commercial production in the interest of the employer); company police and guard protection; taxes and insurance on the employer's buildings which are not used for lodgings furnished to the employee; "dues" to chambers of commerce and other organizations used, for example, to repay subsidies given to the employer to locate his factory in a particular community; transportation charges where such transportation is an incident of and necessary to the employment (as in the case of maintenance-of-way employees of a railroad); charges for rental of uniforms where the nature of the business requires the employee to wear a uniform; medical services and hospitalization which the employer is bound to furnish under workmen's compensation acts, or similar Federal, State, or local law.

29 C.F.R. 531.32 (c) (emphasis supplied).

Notwithstanding that Defendant paid Plaintiff nothing for her hours worked each week; Defendant made deductions from Plaintiff's pay by way of a daily $45 fee out of her tips to work at the Club and it doesn't matter what time the dancer comes to work, the $45 fee is mandated by Defendant to be paid by Plaintiff to Defendant. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

---

5 Defendant may also cite Maryland Code Labor & Employment Section 3-418 in alleged support of its argument that the proposed "facilities" or "advantages" in this case (security guards, dressing rooms, stage, DJ, bathrooms, and showers) constitute wages. In that section, however, the determinative factor also focuses on the question of whether the alleged benefit was provided for the benefit or convenience of the employer. The Maryland law similarly rejects alleged "advantages" as wages where the "advantage" is primarily for the benefit or convenience of the employer.

> Q What's the charge to work at the club?
> A It's -- there is no charge. There's a tip at the end of the night if you make $45 to pay to help keep the place clean. You know what I mean? It helps keep the lights on.
> Q So it's a tip-out?
> A Yeah. It's a tip.
> Q For $40?
> A Forty-five dollars.
> Q Forty-five dollars.
> A Yeah. It doesn't matter what time you get there – P.25
>
> Q So who set the $45 tip out?
> A That was just there when I got there. It was always $45.
> Q Who told you about it?
> A When I was hired. The guy who trained me, Mac. P.26-27
>
> Q You instructed them to pay it? Someone instructed them?
> A I tell people when they come in that if they make their money, they can pay a $45 tip-out. This is very common. It's a maintenance fee. We explain that when the girls are hired. P.28
>
> Q Okay. Now, what you referred to a maintenance fee, define what that is related to. In other words -- strike that.
> Explain where that money goes.
> A Okay. Basically, it pays to clean the carpets, to re-stock soap and toilet tissue, paper towels, toiletries, lady products, ice machines, maintenance on repairing, you know, everything.
> Q Okay. So would you classify -- it is better classified as a cleaning fee?
> A Yeah. Cleaning fee. P.58-59
>
> Q Okay. Did you during your tenure rely on that Liquor Board handout while you were being trained by Mac?
> A Yes. Like I said, I carried it around with me quite a while.
> Q Okay. And did you ever ask the Liquor Board about the independent contractor language?
> A I didn't ask them, but we've had – you know, we've had no -- no one's ever had a problem with it before.P.80-81

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.25, P.26, P.27, P.28, P.58, P.59, P.80, P.81

In the August 9, 2013, Deposition of Lisa Ireland, President of PP&G, Inc., 30(b)(6) designee of Defendant PP&G, Inc. went like this:

> Q You stated that part of the money from the $45 goes to items like cleaning rugs and having pool tables re-surfaced?

> A No. Cleaning. The cleaning of the rugs, cleaning of the pool tables. The cleaning of the girls' dressing room.
> Q Okay. So it goes to cleaning of the facility?
> A The facilities they use. The girls use the pool tables. They entertain customers with pool tables. I know they appreciate the clean carpet. I would, if was a girl working in that environment. The lower you let a club go down, the less likely you are to have happy employees. P. 17-18

*Exhibit 2, August 9, 2013, Deposition of Lisa Ireland, President of PP&G, Inc., 30(b)(6) designee of Defendant PP&G, Inc.*, P. 17-18

Thus the question for this Court becomes the analysis of whether Defendant's business overhead (including on-premises security, use of on-premises dressing rooms with lockers, use of bathroom facilities, use of make-up areas, use of mirrors, and use of showers, as well as a disk jockey so Plaintiffs could dance to music for Defendant's patrons[6]), which Defendant will call "facilities" or "advantages," was provided primarily for the benefit of Defendant (the employer) or Plaintiffs (the employees). Courts have also long agreed that not everything of value received by an employee from her employer represents income. *See e.g., Jones v. United States,* 60 Ct. Cl. 552 (1925) (quarters allowance for Army officer not income); *Saunders v. Commissioner*, 215 F.2d 768 (3d Cir. 1954) (meal allowance for state police not income); *Diamond v. Sturr*, 221 F.2d 264 (2d Cir. 1955) (food and lodging to employee while on duty at mental institution not income); *United States v. Gotcher,* 401 F.2d 118 (5th Cir. 1968) (expense paid trip to Germany not income); *Benaglia v. Commissioner*, 36 B.T.A. 838 (1937), *appeal dismissed*, 97 F.2d 996 (9th Cir. 1938), (meal and lodging for hotel manager not income); *Cavanagh v. Commissioner* 36 T.C. 300 (1961) (reimbursement for food and lodging incurred because of move not income).

**C. In Addition to Their Unpaid Wages, Plaintiffs are Entitled to Liquidated**

[6] It cannot be overemphasized that never before had Defendant regarded these items as wages or income of any kind to Plaintiffs. Had Defendant actually been of this mindset, it is obvious that Defendant would have (by legal obligation) provided each Plaintiff with a W-2 or 1099 reflecting the costs of these "advantages."

**Damages in an Equal Amount to Their Unpaid Wages.**

The FLSA “plainly envisions” that liquidated damages “are the norm” for violations of the FLSA. *Mayhew v. Wells,* 125 F.3d 216, 220 (4th Cir.1997). The FLSA permits a trial court in its sound discretion to refuse or reduce an award of liquidated damages where the Court is satisfied that (1) “the employer’s failure to comply was in good faith,” and (2) “the employer had reasonable grounds for believing that his act or omission was not violative of the Act.” *Van Dyke v. Bluefield Gas Co.,* 210 F.2d 620, 622 (4th Cir.1954). The determination of good faith is discretionary with the trial judge. *Hayes v. Bill Haley and His Comets, Inc.,* 274 F.Supp. 34, 37 (E.D.Pa. 1967). Accordingly, the determination of the award for liquidated damages is a question for the Judge and is not proper for jury consideration. *McClanahan v. Matthews,* 440 F.2d 320, 322 (6th Cir. 1971); *Altman v. Stevens Fashion Fabrics,* 441 F.Supp. 1318, 1323 (N.D.Calif. 1977).

Defendant did not rely on any U.S. Department of Labor Opinion in your decision not to pay Plaintiff wages as required by law. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Defendant did not rely on any U.S. Department of Labor opinion in your decision not to pay Plaintiff wages as required by law?
> A I don't understand this question.
> Q You didn't rely on any cases or any laws or opinions by the U.S. Department of Labor?
> A Not myself, no. P.37

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.37

Defendant did not rely on any Maryland Department of Labor Opinion in your decision not to pay Plaintiff wages as required by law. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q You did not rely on any Maryland Department of Labor opinion? The last question was U.S. This one is Maryland.
> A Okay.
> Q In your decision not to pay wages as required --
> A No, not myself personally.

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.37

Defendant did not rely on any 4th Circuit Court Opinion in your decision to not to pay Plaintiff wages as required by law. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Okay. And Defendant did not rely on any Fourth Circuit Court opinion in your decision not to pay Plaintiff wages as required by law, correct?
> A (Nodding head.)

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.38

Defendant did not rely on any Maryland Court Opinion in your decision not to pay Plaintiff wages as required by law. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Okay. Defendant did not rely on any Maryland Court opinion in your decision not to pay Plaintiff wages as required by law?
> A No. P.38

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.38

Defendant cannot produce any documented evidence that it relied on any legal opinion, Department of Labor Opinion, or other written guidance to mitigate its failure to pay wages as required by law. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Defendant cannot produce any document or evidence that it relied on any legal opinion, Department of Labor opinion, or other written guidance to mitigate its failure to pay wages as required by law? You can't rely on any legal authority or opinion, any Department of Labor opinion, or other written guidance to mitigate its failure to pay – your failure to pay wages as required by law?
> A No. P.38-39

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.38-39

In *Wright v. Carrigg*, 275 F.2d 448, 449 (4th Cir.1960), the Fourth Circuit noted that §260 of the FLSA operates to excuse liability for liquidated damages only where the employer demonstrates both good faith *and* reasonable grounds for believing that he was not acting in violation of FLSA. Thus, the employer must satisfy both prongs of a two-prong test in order to be relieved of liability for liquidated damages. Moreover, the Fourth Circuit has held that the test of the good faith requirement to excuse liability is an objective one and not a subjective one. *See Clifton D. Mayhew, Inc. v. Wirtz*, 413 F.2d 658, 661-62 (4th Cir. 1969). Unlike the issue of willfulness where Plaintiff bears the burden of proof, on the issue of liquidated damages, Defendant bears the "plain and substantial burden" of proving that its actions were objectively reasonable and were prompted solely by good faith. Furthermore, a finding that the employer did not willfully violate the FLSA does not foreclose a finding that the employer did not act in good faith, as proof of an intentional violation of the FLSA is not necessary to obtain an award of liquidated damages. *Troutt v. Stavola Brothers, Inc.*, 905 F.Supp. 295, 302 (M.D.N.C.1995).

**D. Defendant's Practice of Deducting Plaintiffs' Wages for Various Fees and Fines Associated with Plaintiffs' Employment Duties and Performances Constituted Unlawful Deductions in Violation of the MWPCL.**

Miss Butler never authorized in writing for the Defendant to make deductions from her wages. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Okay. Miss Butler never authorized in writing for the Defendant to make deductions from her wages?
> A No.P.39

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.39

Pursuant to MWPCL § 3-503, "[a]n employer may not make a deduction from the wage of an employee **unless** the deduction is (1) ordered by a court of competent jurisdiction; (2) authorized expressly in writing by the employee; (3) allowed by the Commissioner because the employee has received full consideration for the deduction; or (4) otherwise made in accordance with any law or any rule or regulation issued by a governmental unit. In the absence of one of the limited aforementioned exceptions, an employer is **not** allowed to make deductions from the wage of an employee unless it is authorized in writing by the employee." *Marroquin,* 505 F.Supp.2d. at 292-93.

Defendant cannot produce any documented evidence that it relied on any legal opinion, Department of Labor Opinion, or other written guidance to mitigate its failure to pay wages as required by law. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Defendant cannot produce any document or evidence that it relied on any legal opinion, Department of Labor opinion, or other written guidance to mitigate its failure to pay wages as required by law? You can't rely on any legal authority or opinion, any Department of Labor opinion, or other written guidance to mitigate its failure to pay – your failure to pay wages as required by law?
> A No. P.38-39

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.*, P.38-39

In this case, Defendant made deductions from Plaintiff's pay via charges, fees, mandated by Defendant to be paid by Plaintiff to Defendant. Defendant cannot produce any documented evidence that it relied on any legal opinion, Department of Labor Opinion, or other written guidance to mitigate its failure to pay wages as required by law.

Defendant made these deductions from Plaintiff's pay without any purpose or excuse allowable under MWPCL 3-503 and without written permission by Plaintiff. Defendant's action of taking deductions from Plaintiff's wages was unlawful and constituted a violation of the MWPCL for which Defendant is liable to Plaintiff as a matter of law. As such, Plaintiff is entitled to recover all unlawfully deducted wages in an amount to be determined in a subsequent damages hearing.

**V. CONCLUSION**

In consideration of the foregoing, and for good cause shown, Plaintiff requests that this Honorable Court enter Judgment as a Matter of Law in favor of Plaintiff and against Defendant with regard to the following findings:

1. Defendant was, at all times relevant, Plaintiff's employer under the FLSA and MWPCL;

2. Defendant is liable to Plaintiff (in an amount to be determined at a subsequent damages hearing) for violating the minimum wage provisions of the FLSA;

3. Plaintiffs are entitled to liquidated damages in an equal amount to their unpaid minimum wage payments (to be determined at a subsequent damages hearing) under 29 U.S.C. §

216(b); and

4. Defendant is liable to Plaintiff in the amount of all improperly deducted fees and wages from Plaintiffs (in an amount to be determined at a subsequent damages hearing) in violation of the MWPCL.

Respectfully submitted,

___/s/________________________

J. Wiggs, Esq.
The Wiggs Law Group, LLC
9701 Apollo Drive
Suite 301
Upper Marlboro, MD 20774
240-326-3711
Counsel for Plaintiff