## In The Matter Of:

*Unique S. Butler  vs.*
*PP&G, Inc., et al.*

---

*Lisa Diane Ireland*

*Vol. 1*

*August 9, 2013*

---

*Gore Brothers Reporting & Videoconferencing*

*20 South Charles Street, Suite 901*

*Baltimore, MD 21201*

*410-837-3027*

*www.gorebrothers.com*



Since 1961 - Serving MD, DC & VA - Worldwide

Min-U-Script® with Word Index

1

1      UNITED STATES DISTRICT COURT

2         FOR THE DISTRICT OF MARYLAND

3

4   UNIQUE S. BUTLER

5            Plaintiff

6   vs.                        Civil Action No.

7   PP&G, INC., et al.          1:2013cv00430

8            Defendant

9   _____/

10

11

12            The deposition of LISA DIANE IRELAND was

13   held on Friday, August 9, 2013, commencing at 1:40 p.m.,

14   at the Law Offices of the Themelis Firm, LLC, 4610

15   Eastern Avenue, Baltimore, Maryland 21224, before Janet

16   A. Colman, Notary Public.

17

18

19

20

21   REPORTED BY:  Janet A. Colman

2

1   APPEARANCES:

2                    ON BEHALF OF THE PLAINTIFF:

3                    J. WIGGS, ESQUIRE

4                        The Wiggs Law Group

5                        9701 Apollo Drive, Suite 301

6                        Upper Marlboro, Maryland 20774

7                        Telephone: 240-326-3711

8                        Facsimile: 240-525-0320

9                        Email: j@wiggslawgroup.com

10

11                   ON BEHALF OF THE DEFENDANTS:

12                   JOHN C. THEMELIS, ESQUIRE

13                       Themelis Firm, LLC

14                       4610 Eastern Avenue

15                       Baltimore, Maryland 21224

16                       Telephone: 410-467-3400

17                       Facsimile: 410-438-3000

18                       Email: jct@themelisfirm.com

19

20   ALSO PRESENT:  UNIQUE S. BUTLER

21

3

1                          INDEX

2           Deposition of Lisa Diane Ireland

3                    August 9, 2013

4

5    Examination By:                         Page

6    Mr. Wiggs                              4, 17

7    Mr. Themelis                          13, 19

8

9

10

11

12

13

14

15

16

17

18

19

20

21

4

1                         - - - - -

2                       PROCEEDINGS

3   Whereupon,

4                    LISA DIANE IRELAND,

5   called as a witness, having been first duly sworn to

6   tell the truth, the whole truth, and nothing but the

7   truth, was examined and testified as follows:

8              EXAMINATION BY MR. WIGGS:

9        Q     How are you doing today?

10       A     Okay.

11       Q     Can I get your full name?

12       A     Lisa Diane Ireland.

13       Q     And what is your date of birth?

14       A     5/19/63.

15       Q     And when I refer to the Defendant, I mean

16   Norma Jean's or PP&G, Inc.

17              MR. THEMELIS:  And also, to correct the

18   record, Mr. Wiggs, it's Inc.  It's not an LLC.

19              MR. WIGGS:  Okay.

20              MR. THEMELIS:  I tried to explain that to

21   Bill, but I never got through to him that it's a

5

1  corporation.

2            MR. WIGGS:  Okay.  Okay.

3            MR. THEMELIS:  And I even checked the

4  Department of Assessments and Taxation to make sure I

5  wasn't wrong.  And it lists Lisa as president.  And it

6  was a problem with the resident agent, but I'm also

7  resident agent.

8            MR. WIGGS:  Okay.  I'm glad you told me.

9  BY MR. WIGGS:

10       Q     The Defendant is a corporation formed under

11  the laws of the State of Maryland with it's principal

12  place of business is Baltimore, Maryland, correct?

13       A     Yes, sir.

14       Q     The Defendant made over 500,000 in gross

15  revenue in 2009, correct?

16       A     If that's what my tax form states.  I don't

17  remember each year, but, yes, if that's what my tax

18  form states.  My bookkeeper does it correctly.

19       Q     The Defendant made over $500,000 in gross

20  revenue in 2010, correct?

21       A     I'm not looking at the tax forms.  I know

6

1   you have them there, but whatever is on the tax form is

2   correct.

3            MR. THEMELIS:  Just to speed it up, I made

4   an error by looking at the net on 2.

5            THE WITNESS:  Okay.

6            MR. THEMELIS:  And you did gross more than

7   500,000 on each of those years.

8            THE WITNESS:  Okay.  Well, if it states

9   that, then I did.  Everything is written down and is

10  signed by me.

11           MR. THEMELIS:  And the gross is on this

12  end.

13           THE WITNESS:  This end.  There you go.

14           MR. THEMELIS:  And I looked at the wrong

15  place.

16           THE WITNESS:  Yes.

17  BY MR. WIGGS:

18       Q     Defendant made over $500,000 in gross

19  revenue in 2011, correct?

20       A     Let me ask you.  When you say that the

21  Defendant made, it is the corporation that made

7

1   because --

2           Q     Yes, ma'am.  I understand.

3           A     -- I put the money back into the club

4   numerous times.  So is that what we're saying?  I was

5   wondering if it was -- yes.  Corporation.

6           Q     And the Defendant made over $500,000 in

7   gross revenue in 2012, correct?

8           A     Yes.

9           Q     The Defendant did not rely on the U.S.

10  Department of Labor opinion in your decision not to pay

11  Plaintiff's wages as required by law, correct?

12          A     We go by the Baltimore Liquor Board Adult

13  Entertainment --

14          Q     So you didn't rely on --

15          A     -- which acknowledged contract dancers.

16          Q     So you didn't rely on the U.S. Department

17  of Labor opinion?

18          A     Because they weren't employees.  They're

19  contract.  They're individual contractors.  They work

20  for themselves.  So --

21          Q     But you --

8

1       A     It didn't apply to the dancers.  That

2   applies to the bartenders and to the security.

3       Q     So you did not rely on the opinion --

4       A     No, we did not.

5       Q     -- of the U.S. Department of Labor in your

6   decision not to pay the Plaintiff?

7       A     It would not apply.  No.

8             THE COURT REPORTER:  I'd like to remind you

9   to please wait for the question to be complete before

10  answering.

11            THE WITNESS:  I'm sorry.

12            MR. WIGGS:  I'm sorry.

13  BY MR. WIGGS:

14      Q     And when did the choice for them to become

15  independent contractors or employees come about?  What

16  was the date on that for the dancers?

17      A     They've always been asked.

18      Q     So when did that start?

19      A     They've always been asked whether they want

20  to be individual contractors or employees.

21      Q     So when was the date, or when was the time

9

1   period?

2          A      We opened up in 1998.

3          Q      And where is the document that states that

4   they have that option?

5          A      She -- Miss Butler signed the document, and

6   we have another one that we've made since Miss Butler

7   has -- that's more detailed.

8          Q      Where is the document that states that you

9   have the option of becoming an employee or an

10  independent contractor?

11         A      It's on the paper they sign.

12         Q      No, it's not.

13         A      It should be at the bottom.

14         Q      Where is the document that says that they

15  have the option?

16         A      (Reading:)  Furthermore, I understand that

17  I am an independent contractor responsible for my own

18  taxes and other withholdings.

19                They do not have to sign this if they want

20  to be an employee.  They will be given tax forms if

21  they want to be an employee.

10

1          If they do not want to be an employee, then

2   they will sign this form.  If they say --

3       Q     So it's no document -- no document

4   outlining that that you give them?  It's no document

5   stating --

6       A     There's one form to sign if you want to be

7   an independent contractor.  And if they want to be an

8   employee, then they have to go on my books.

9       Q     But that's verbal?  It's not a document

10  that you give to --

11      A     Yes, it's verbal.  But my new document is

12  not.  It's much more detailed because of what happened

13  here.  I wasn't aware that, you know, there could be an

14  issue.

15          MR. THEMELIS:  It's three pages now instead

16  of a half a page.

17          THE WITNESS:  Yeah.

18  BY MR. WIGGS:

19      Q     And -- okay.  So it's a $5 tip for

20  employees and a $45 tip-out for independent

21  contractors, right?

11

1        A      They're given the option because they're

2    supplied a lot of amenities.  Most of the girls

3    appreciate the amenities they're given.

4        Q      It's a yes or no question.

5        A      Rephrase it again.  State it again.

6        Q      It's $5 for employees?

7        A      Yes.

8        Q      And $45 for independent contractors,

9    correct?

10       A      Yes, that's correct.

11       Q      And you set that fee, that amount?

12       A      Yes.

13       Q      Okay.  And what are the extra services that

14   they get for the $40 difference?

15       A      And that's suggested.  It's not -- because

16   they receive as many towels, washcloths, soap.  They

17   have two showers, which are kept clean every night,

18   every day for them to shower in.

19              They have the amenities they need because

20   they like to wash the pole and the stage down before

21   they -- we supply Clorox wipes for them when they're

1  dancing for the stage.

2           We supply Windex and paper towels for those

3  who like to spray it on instead of wipe it on because

4  some have a preference.

5           And there's a lot involved with the girls

6  and the things that they enjoy that at other clubs it's

7  their responsibility.

8           At Norma Jean's we buy the same products,

9  whether they tip or not.  We supply the same amount of

10  towels.  We still launder them every day, whether

11  they're tipping us for the cleaning fees or not.

12      Q    I'm showing you the 2010, 2011, 2012 tax

13  returns.

14           Can you show me where you've taken a tip

15  credit?  Tip credit has been taken out?

16      A    For -- tip credit for who?

17      Q    For tip.  The employees.

18      A    The employees are responsible for their own

19  tips, just like a waitress would be responsible for her

20  tips at a -- at anywhere else.  She gets paid her fee

21  for -- her salary for working in a restaurant.  And

13

1   they're responsible to report their tips.

2       Q     Well, what about the money that you

3   receive, I guess the $5 or the $45 that you receive

4   from the employees?

5       A     My bookkeeper takes care of -- now, I don't

6   know where -- she has all my books.

7       Q     Okay.

8       A     She totals everything and puts it in.

9             MR. WIGGS:  Witness with you.

10            EXAMINATION BY MR. THEMELIS:

11      Q     Okay.  Miss Ireland, when you said --

12  answered Mr. Wiggs' question who set the maintenance

13  fee or cleaning fee, whatever you want to call it, and

14  you said you did, what did you mean by it when you said

15  you did?

16      A     Well, I wasn't the one that actually set

17  the fee.  Our managers always had a fee that they

18  suggested.  The DJ asks for a tip.  It's something that

19  I appreciate because there is a lot of amenities that

20  the girls get.

21            I have to launder.  I have to -- we use

14

1    Odor Ban, bleach to kill all the germs.  They have --

2    the towels are destroyed all the time by the glue they

3    use.  And we buy fresh towels new.  We replace

4    everything.  It's --

5           Q     Okay.  My question was merely when you said

6    "you", you meant manager at the time set it --

7           A     Yes.  I'm aware of it.

8           Q     -- on behalf of PP&G?

9           A     Yes.  I was aware of it, but he's the one

10   that did set it, yes.  But I am aware of it.

11                MR. WIGGS:  Who set it?

12                THE WITNESS:  My first manager, Mr. Garrett

13   MacMillion.

14                MR. WIGGS:  He was under your supervision?

15                THE WITNESS:  Yes.  He was an employee of

16   mine.

17                MR. THEMELIS:  Should I continue?

18                MR. WIGGS:  I'm sorry.

19                MR. THEMELIS:  That's okay.

20   BY MR. THEMELIS:

21           Q     Isn't it true that there is a difference in

15

1   the cleaning when we're referring to entertainers as

2   independent contractors as opposed to like the

3   bartender or the bouncer?

4           A       Oh, yes.   There's a big difference.

5           Q       And what causes that difference?

6           A       Well, because the bartenders and the

7   security don't require Clorox wipes.   They don't

8   require towels to take a shower, nor do they require

9   the soap to shower or the washcloths.

10          And they don't require me to launder or

11  supply the laundry supplies that it takes to make

12  everything -- all of the amenities that the dancers

13  have.

14          Q       But that cleaning also went to like

15  cleaning of the rugs?

16          A       Yes.

17          Q       The shampooing of the rugs --

18          A       We shampoo the --

19          Q       -- and work area?

20          A       And the -- we do the rugs in the back.   We

21  do the rugs on the pool tables.   We have the pool

16

1   tables re-surfaced, cleaned.

2          Q      Now, ma'am, have you ever read that -- what

3   was introduced as a Liquor Board policy on adult

4   entertainers?

5          A      Yes, sir.

6          Q      And when did you first read that?

7          A      I was given it when I took the Liquor --

8   when I opened up the business, I was -- they made us

9   take a test.  They informed us and gave us all the

10  paperwork.

11         Q      So that would have been at some point after

12  '98, right?

13         A      Actually, I believe it was '97.  We were

14  supposed to open up in '97.  Our contractor wasn't

15  done, and we couldn't open up until the 2nd of January

16  of '98.  But I was prepared to open up before that.  I

17  just could not.

18         Q      Now, I believe that that is dated on the

19  second page -- the third -- on the third page as the

20  Ordinance being effective May 26th of 1999.

21                Does that refresh your recollection that

17

1  you read this in '98?

2       A     Well, I suppose it was '99.

3       Q     Okay.  It really doesn't matter.

4       A     Is this different?  Did they change it?

5       Q     Well, ma'am, I don't know whether it's

6  different or not.

7       A     Okay.

8       Q     But I assume that -- do you remember what

9  form you were given, the things from the Liquor Board?

10      A     I know it was from the Liquor Board.  No.

11 It was obviously -- this has obviously been updated

12 since I opened the club.

13      Q     Um-hum.  Ma'am, have you ever directed Walt

14 or any other manager to deviate from the policy that

15 you set?

16      A     No, absolutely not.

17            MR. THEMELIS:  I don't have any more.

18            EXAMINATION BY MR. WIGGS:

19      Q     You stated that part of the money from the

20 $45 goes to items like cleaning rugs and having pool

21 tables re-surfaced?

1      A      No.  Cleaning.  The cleaning of the rugs,

2  cleaning of the pool tables.  The cleaning of the

3  girls' dressing room.

4      Q      Okay.  So it goes to cleaning of the

5  facility?

6      A      The facilities they use.  The girls use the

7  pool tables.  They entertain customers with pool

8  tables.  I know they appreciate the clean carpet.  I

9  would, if was a girl working in that environment.  The

10  lower you let a club go down, the less likely you are

11  to have happy employees.

12      Q      And what other -- besides that fee, what

13  other fees are paid to DJs and housemoms?

14      A      There are no fees.  It's a tip, if they

15  want to tip.  They don't have to tip.

16      Q      How much?

17      A      The DJ still plays their music.

18      Q      How much is a DJ tip?

19      A      I believe it's whatever they want because

20  I'm sure they all don't tip.

21      Q      How much is the housemom tip?

19

1       A     I don't know.  Whatever they want to tip

2  them.  She's there for their benefit.  I'm sure there's

3  some that don't use her supplies.  They wouldn't want

4  to tip her.  Some bring their own.  Some do not bring

5  anything to work.

6               EXAMINATION BY MR. THEMELIS:

7       Q     Ma'am, to the best of your information,

8  knowledge, that there are no penalties or fines

9  whatsoever charged to the entertainers who are

10  independent contractors or for that matter the

11  employees?

12      A     No.  We don't have any fines.

13      Q     Um-hum.  Ma'am, in the tip-out, as it's

14  been referred to, is that the cleaning or maintenance

15  fee that you discussed?

16      A     That is the cleaning, yes.

17      Q     Um-hum.  Are there any other fees charged

18  for the independent contractors or employees?

19      A     No.

20      Q     Do you in any way control the method and

21  manner in which the entertainers as independent

1  contractors do their work?

2       A    No.  They choose how to do their work and

3  how they'd like to perform their job.

4       Q    And who contracts with an independent

5  contractor when they come in?

6       A    Walter.

7            MR. THEMELIS:  Okay.  I don't have any

8  other questions.

9            Lisa, you heard me advise other people that

10  they have the right to review the deposition and

11  approve it before they print it out.

12            You can't change what's down there, but you

13  could say, I believe I testified to this.  And what

14  would happen is the stenographer would check her

15  records.

16            But she would only change it if what you

17  said wasn't consistent with -- or strike that -- was

18  consistent with what she put down.

19            Did I confuse you by that?

20            THE WITNESS:  Yes.  Sorry.

21            MR. THEMELIS:  In other words, she would

21

1  not change it just because you said so.

2              THE WITNESS:  Of course not.

3              MR. THEMELIS:  She'd have to go back, check

4  what she wrote, and then based on that, tell you

5  whether it did or did not happen.

6              You can waive that and not go through it,

7  if you wish.

8              THE WITNESS:  Could I ask you what your

9  advice is?  You're my lawyer.

10              MR. THEMELIS:  Well, you can get a copy.

11  It will be e-mailed to me.

12              THE WITNESS:  That's fine.  It seems

13  superfluous, but I don't want to miss anything that's

14  going to hurt me.

15              MR. THEMELIS:  Okay.  So she'll read.

16              THE WITNESS:  Thank you very much.

17              (Deposition concluded at 2:04 p.m.)

18

19

20

21

22

1                    CERTIFICATE OF DEPONENT

2

3            I hereby certify that I have read and

4    examined the foregoing transcript, and the same is a

5    true and accurate record of the testimony given by me.

6

7            Any additions or corrections that I feel

8    are necessary will be made on the Errata Sheet.

9

10

11                    _____

12                    Lisa Diane Ireland

13

14

15

16   (If needed, make additional copies of the Errata Sheet

17   on the next page or use a blank piece of paper.)

18

19

20

21

23

1                              ERRATA SHEET

2    Case: Butler vs. PP&G, Inc., et al.

3    Witness: Lisa Diane Ireland   Date: August 9, 2013

4    PAGE/LINE        SHOULD READ        REASON FOR CHANGE

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

24

1   State of Maryland

2   City of Baltimore, to wit:

3                I, Janet A. Colman, a Notary Public of the

4   State of Maryland, City of Baltimore, do hereby certify

5   that the within-named witness personally appeared

6   before me at the time and place herein set out, and

7   after having been duly sworn by me, according to law,

8   was examined by counsel.

9                I further certify that the examination was

10  recorded stenographically by me and this transcript is

11  a true record of the proceedings.

12               I further certify that I am not of counsel

13  to any of the parties, nor in any way interested in the

14  outcome of this action.

15               As witness my hand this 12th day of

16  August, 2013.

17  _____        *Janet A. Colman*

18                       Janet A. Colman

19                        Notary Public

20  My Commission Expires:

21  August 2, 2016

## $

**$40 (1)**
11:14
**$45 (4)**
10:20;11:8;13:3;17:20
**$5 (3)**
10:19;11:6;13:3
**$500,000 (3)**
5:19;6:18;7:6

## A

**absolutely (1)**
17:16
**accurate (1)**
22:5
**acknowledged (1)**
7:15
**actually (2)**
13:16;16:13
**additional (1)**
22:16
**additions (1)**
22:7
**Adult (2)**
7:12;16:3
**advice (1)**
21:9
**advise (1)**
20:9
**again (2)**
11:5,5
**agent (2)**
5:6,7
**always (3)**
8:17,19;13:17
**amenities (5)**
11:2,3,19;13:19;15:12
**amount (2)**
11:11;12:9
**answered (1)**
13:12
**applies (1)**
8:2
**apply (2)**
8:1,7
**appreciate (3)**
11:3;13:19;18:8
**approve (1)**
20:11
**area (1)**
15:19
**Assessments (1)**
5:4
**assume (1)**
17:8
**aware (1)**
10:13;14:7,9,10

## B

**back (3)**
7:3;15:20;21:3
**Baltimore (2)**
5:12;7:12
**Ban (1)**
14:1
**bartender (1)**
15:3
**bartenders (2)**
8:2;15:6
**based (1)**
21:4
**become (1)**
8:14
**becoming (1)**
9:9
**behalf (1)**
14:8
**benefit (1)**
19:2
**besides (1)**
18:12
**best (1)**
19:7
**big (1)**
15:4
**Bill (1)**
4:21
**birth (1)**
4:13
**blank (1)**
22:17
**bleach (1)**
14:1
**Board (4)**
7:12;16:3;17:9,10
**bookkeeper (2)**
5:18;13:5
**books (2)**
10:8;13:6
**bottom (1)**
9:13
**bouncer (1)**
15:3
**bring (2)**
19:4,4
**business (2)**
5:12;16:8
**Butler (2)**
9:5,6
**buy (2)**
12:8;14:3

## C

**call (1)**
13:13
**called (1)**
4:5
**Can (4)**
4:11;12:14;21:6,10
**care (1)**
13:5

**carpet (1)**
18:8
**causes (1)**
15:5
**CERTIFICATE (1)**
22:1
**certify (1)**
22:3
**change (4)**
17:4;20:12,16;21:1
**charged (2)**
19:9,17
**check (2)**
20:14;21:3
**checked (1)**
5:3
**choice (1)**
8:14
**choose (1)**
20:2
**clean (2)**
11:17;18:8
**cleaned (1)**
16:1
**cleaning (13)**
12:11;13:13;15:1,14,15;
17:20;18:1,1,2,2,4;19:14,16
**Clorox (2)**
11:21;15:7
**club (3)**
7:3;17:12;18:10
**clubs (1)**
12:6
**complete (1)**
8:9
**concluded (1)**
21:17
**confuse (1)**
20:19
**consistent (2)**
20:17,18
**continue (1)**
14:17
**contract (2)**
7:15,19
**contractor (5)**
9:10,17;10:7;16:14;20:5
**contractors (9)**
7:19;8:15,20;10:21;11:8;
15:2;19:10,18;20:1
**contracts (1)**
20:4
**control (1)**
19:20
**copies (1)**
22:16
**copy (1)**
21:10
**corporation (4)**
5:1,10;6:21;7:5
**corrections (1)**
22:7
**correctly (1)**

**5:18**
**course (1)**
21:2
**COURT (1)**
8:8
**credit (3)**
12:15,15,16
**customers (1)**
18:7

## D

**dancers (4)**
7:15;8:1,16;15:12
**dancing (1)**
12:1
**date (3)**
4:13;8:16,21
**dated (1)**
16:18
**day (2)**
11:18;12:10
**decision (2)**
7:10;8:6
**Defendant (8)**
4:15;5:10,14,19;6:18,21;
7:6,9
**Department (4)**
5:4;7:10,16;8:5
**DEPONENT (1)**
22:1
**deposition (2)**
20:10;21:17
**destroyed (1)**
14:2
**detailed (2)**
9:7;10:12
**deviate (1)**
17:14
**DIANE (3)**
4:4,12;22:12
**difference (4)**
11:14;14:21;15:4,5
**different (2)**
17:4,6
**directed (1)**
17:13
**discussed (1)**
19:15
**DJ (3)**
13:18;18:17,18
**DJs (1)**
18:13
**document (9)**
9:3,5,8,14;10:3,3,4,9,11
**done (1)**
16:15
**down (5)**
6:9;11:20;18:10;20:12,18
**dressing (1)**
18:3
**duly (1)**
4:5

Case 3:13-cv-00430-WMN   Document 21-3   Filed 08/20/13   Page 27 of 29

Unique Sports vs.
PP&G, Inc., et al.

Lisa Diane Ireland - Vol. 1
August 9, 2013

**E**

effective (1)
16:20
else (1)
12:20
e-mailed (1)
21:11
employee (6)
9:9,20,21;10:1,8;14:15
employees (11)
7:18;8:15,20;10:20;11:6;
12:17,18;13:4;18:11;19:11,
18
end (2)
6:12,13
enjoy (1)
12:6
entertain (1)
18:7
entertainers (4)
15:1;16:4;19:9,21
Entertainment (1)
7:13
environment (1)
18:9
Errata (2)
22:8,16
error (1)
6:4
even (1)
5:3
EXAMINATION (4)
4:8;13:10;17:18;19:6
examined (2)
4:7;22:4
explain (1)
4:20
extra (1)
11:13

**F**

facilities (1)
18:6
facility (1)
18:5
fee (8)
11:11;12:20;13:13,13,17,
17;18:12;19:15
feel (1)
22:7
fees (4)
12:11;18:13,14;19:17
fine (1)
21:12
fines (2)
19:8,12
first (3)
4:5;14:12;16:6
follows (1)
4:7

foregoing (1)
22:4
form (6)
5:16,18;6:1;10:2,6;17:9
formed (1)
5:10
forms (2)
5:21;9:20
fresh (1)
14:3
full (1)
4:11
Furthermore (1)
9:16

**G**

Garrett (1)
14:12
gave (1)
16:9
germs (1)
14:1
gets (1)
12:20
girl (1)
18:9
girls (4)
11:2;12:5;13:20;18:6
girls' (1)
18:3
given (6)
9:20;11:1,3;16:7;17:9;
22:5
glad (1)
5:8
glue (1)
14:2
goes (2)
17:20;18:4
gross (6)
5:14,19;6:6,11,18;7:7
guess (1)
13:3

**H**

half (1)
10:16
happen (2)
20:14;21:5
happened (1)
10:12
happy (1)
18:11
heard (1)
20:9
hereby (1)
22:3
housemom (1)
18:21
housemoms (1)
18:13

hurt (1)
21:14

**I**

Inc (2)
4:16,18
independent (11)
8:15;9:10,17;10:7,20;
11:8;15:2;19:10,18,21;20:4
individual (2)
7:19;8:20
information (1)
19:7
informed (1)
16:9
instead (2)
10:15;12:3
into (1)
7:3
introduced (1)
16:3
involved (1)
12:5
IRELAND (4)
4:4,12;13:11;22:12
issue (1)
10:14
items (1)
17:20

**J**

January (1)
16:15
Jean's (2)
4:16;12:8
job (1)
20:3

**K**

kept (1)
11:17
kill (1)
14:1
knowledge (1)
19:8

**L**

Labor (3)
7:10,17;8:5
launder (3)
12:10;13:21;15:10
laundry (1)
15:11
law (1)
7:11
laws (1)
5:11
lawyer (1)
21:9

less (1)
18:10
likely (1)
18:10
Liquor (5)
7:12;16:3,7;17:9,10
LISA (5)
4:4,12;5:5;20:9;22:12
lists (1)
5:5
LLC (1)
4:18
looked (1)
6:14
looking (2)
5:21;6:4
lot (3)
11:2;12:5;13:19
lower (1)
18:10

**M**

ma'am (6)
7:2;16:2;17:5,13;19:7,13
MacMillion (1)
14:13
maintenance (2)
13:12;19:14
manager (3)
14:6,12;17:14
managers (1)
13:17
manner (1)
19:21
many (1)
11:16
Maryland (2)
5:11,12
matter (2)
17:3;19:10
May (1)
16:20
mean (2)
4:15;13:14
meant (1)
14:6
merely (1)
14:5
method (1)
19:20
mine (1)
14:16
Miss (4)
9:5,6;13:11;21:13
money (3)
7:3;13:2;17:19
more (4)
6:6;9:7;10:12;17:17
Most (1)
11:2
much (5)
10:12;18:16,18,21;21:16

Unique Scribe Builder vs.
PP&G, Inc., et al.

Case 1:13-cv-00430-WMN   Document 21-3   Filed 08/20/13   Page 28 of 29

Bish Diane Ireland -  Vol. 1
August 9, 2013

**music (1)**
18:17

## N

**name (1)**
4:11
**necessary (1)**
22:8
**need (1)**
11:19
**needed (1)**
22:16
**net (1)**
6:4
**new (2)**
10:11;14:3
**next (1)**
22:17
**night (1)**
11:17
**nor (1)**
15:8
**Norma (2)**
4:16;12:8
**numerous (1)**
7:4

## O

**obviously (2)**
17:11,11
**Odor (1)**
14:1
**one (4)**
9:6;10:6;13:16;14:9
**only (1)**
20:16
**open (3)**
16:14,15,16
**opened (3)**
9:2;16:8;17:12
**opinion (3)**
7:10,17;8:3
**opposed (1)**
15:2
**option (4)**
9:4,9,15;11:1
**Ordinance (1)**
16:20
**out (2)**
12:15;20:11
**outlining (1)**
10:4
**over (4)**
5:14,19;6:18;7:6
**own (3)**
9:17;12:18;19:4

## P

**page (4)**
10:16;16:19,19;22:17

**pages (1)**
10:15
**paid (2)**
12:20;18:13
**paper (3)**
9:11;12:2;22:17
**paperwork (1)**
16:10
**part (1)**
17:19
**pay (2)**
7:10;8:6
**penalties (1)**
19:8
**people (1)**
20:9
**perform (1)**
20:3
**period (1)**
9:1
**piece (1)**
22:17
**place (2)**
5:12;6:15
**Plaintiff (1)**
8:6
**Plaintiff's (1)**
7:11
**plays (1)**
18:17
**please (1)**
8:9
**pm (1)**
21:17
**point (1)**
16:11
**pole (1)**
11:20
**policy (2)**
16:3;17:14
**pool (6)**
15:21,21;17:20;18:2,7,7
**PP&G (2)**
4:16;14:8
**preference (1)**
12:4
**prepared (1)**
16:16
**president (1)**
5:5
**principal (1)**
5:11
**print (1)**
20:11
**problem (1)**
5:6
**PROCEEDINGS (1)**
4:2
**products (1)**
12:8
**put (2)**
7:3;20:18
**puts (1)**

13:8

## R

**read (5)**
16:2,6;17:1;21:15;22:3
**Reading (1)**
9:16
**really (1)**
17:3
**receive (3)**
11:16;13:3,3
**recollection (1)**
16:21
**record (2)**
4:18;22:5
**records (1)**
20:15
**refer (1)**
4:15
**referred (1)**
19:14
**referring (1)**
15:1
**refresh (1)**
16:21
**rely (4)**
7:9,14,16;8:3
**remember (2)**
5:17;17:8
**remind (1)**
8:8
**Rephrase (1)**
11:5
**replace (1)**
14:3
**report (1)**
13:1
**REPORTER (1)**
8:8
**require (4)**
15:7,8,8,10
**required (1)**
7:11
**resident (2)**
5:6,7
**responsibility (1)**
12:7
**responsible (4)**
9:17;12:18,19;13:1
**restaurant (1)**
12:21
**re-surfaced (2)**
16:1;17:21
**returns (1)**
12:13
**revenue (4)**
5:15,20;6:19;7:7
**review (1)**
20:10
**right (3)**
10:21;16:12;20:10
**room (1)**

18:3
**rugs (6)**
15:15,17,20,21;17:20;
18:1

## S

**salary (1)**
12:21
**same (3)**
12:8,9;22:4
**saying (1)**
7:4
**second (1)**
16:19
**security (2)**
8:2;15:7
**seems (1)**
21:12
**services (1)**
11:13
**set (7)**
11:11;13:12,16;14:6,10,
11;17:15
**shampoo (1)**
15:18
**shampooing (1)**
15:17
**Sheet (2)**
22:8,16
**show (1)**
12:14
**shower (3)**
11:18;15:8,9
**showers (1)**
11:17
**showing (1)**
12:12
**sign (4)**
9:11;19:10:2,6
**signed (2)**
6:10;9:5
**soap (2)**
11:16;15:9
**sorry (4)**
8:11,12;14:18;20:20
**speed (1)**
6:3
**spray (1)**
12:3
**stage (2)**
11:20;12:1
**start (1)**
8:18
**State (2)**
5:11;11:5
**stated (1)**
17:19
**states (5)**
5:16,18;6:8;9:3,8
**stating (1)**
10:5
**stenographer (1)**

Case 3:13-cv-00430-WMN   Document 21-3   Filed 08/20/13   Page 29 of 29

Unique Casual Builder vs.
PP&G, Inc., et al.

Lisa Diane Ireland -  Vol. 1
August 9, 2013

20:14
**still (2)**
   12:10;18:17
**strike (1)**
   20:17
**suggested (2)**
   11:15;13:18
**superfluous (1)**
   21:13
**supervision (1)**
   14:14
**supplied (1)**
   11:2
**supplies (2)**
   15:11;19:3
**supply (4)**
   11:21;12:2,9;15:11
**suppose (1)**
   17:2
**supposed (1)**
   16:14
**sure (3)**
   5:4;18:20;19:2
**sworn (1)**
   4:5

**T**

**tables (6)**
   15:21;16:1;17:21;18:2,7,
   8
**tax (6)**
   5:16,17,21;6:1;9:20;
   12:12
**Taxation (1)**
   5:4
**taxes (1)**
   9:18
**test (1)**
   16:9
**testified (2)**
   4:7;20:13
**testimony (1)**
   22:5
**THEMELIS (19)**
   4:17,20;5:3;6:3,6,11,14;
   10:15;13:10;14:17,19,20;
   17:17;19:6;20:7,21;21:3,10,
   15
**third (2)**
   16:19,19
**three (1)**
   10:15
**times (1)**
   7:4
**tip (15)**
   10:19;12:9,14,15,16,17;
   13:18;18:14,15,15,18,20,
   21;19:1,4
**tip-out (2)**
   10:20;19:13
**tipping (1)**
   12:11

**tips (3)**
   12:19;20;13:1
**today (1)**
   4:9
**told (1)**
   5:8
**took (1)**
   16:7
**totals (1)**
   13:8
**towels (6)**
   11:16;12:2,10;14:2,3;
   15:8
**transcript (1)**
   22:4
**tried (1)**
   4:20
**true (2)**
   14:21;22:5
**truth (3)**
   4:6,6,7
**two (1)**
   11:17

**U**

**Um-hum (3)**
   17:13;19:13,17
**under (2)**
   5:10;14:14
**up (6)**
   6:3;9:2;16:8,14,15,16
**updated (1)**
   17:11
**use (6)**
   13:21;14:3;18:6,6;19:3;
   22:17

**V**

**verbal (2)**
   10:9,11

**W**

**wages (1)**
   7:11
**wait (1)**
   8:9
**waitress (1)**
   12:19
**waive (1)**
   21:6
**Walt (1)**
   17:13
**Walter (1)**
   20:6
**wash (1)**
   11:20
**washcloths (2)**
   11:16;15:9
**way (1)**
   19:20

**weren't (1)**
   7:18
**what's (1)**
   20:12
**whatsoever (1)**
   19:9
**Whereupon (1)**
   4:3
**whole (1)**
   4:6
**WIGGS (15)**
   4:8,18,19;5:2,8,9;6:17;
   8:12,13;10:18;13:9;14:11,
   14,18;17:18
**Wiggs' (1)**
   13:12
**Windex (1)**
   12:2
**wipe (1)**
   12:3
**wipes (2)**
   11:21;15:7
**wish (1)**
   21:7
**withholdings (1)**
   9:18
**witness (15)**
   4:5;6:5,8,13,16;8:11;
   10:17;13:9;14:12,15;20:20;
   21:2,8,12,16
**wondering (1)**
   7:5
**words (1)**
   20:21
**work (5)**
   7:19;15:19;19:5;20:1,2
**working (2)**
   12:21;18:9
**written (1)**
   6:9
**wrong (2)**
   5:5;6:14
**wrote (1)**
   21:4

**Y**

**year (1)**
   5:17
**years (1)**
   6:7

**1**

**1998 (1)**
   9:2
**1999 (1)**
   16:20

**2**

**2 (1)**
   6:4

**2:04 (1)**
   21:17
**2009 (1)**
   5:15
**2010 (2)**
   5:20;12:12
**2011 (2)**
   6:19;12:12
**2012 (2)**
   7:7;12:12
**26th (1)**
   16:20
**2nd (1)**
   16:15

**5**

**5/19/63 (1)**
   4:14
**500,000 (2)**
   5:14;6:7

**9**

**97 (2)**
   16:13,14
**98 (3)**
   16:12,16;17:1
**99 (1)**
   17:2