IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Unique S. Butler | ) |
|    Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. WMN-13-430 |
| | ) |
| PP&G, INC. | ) |
|    Defendants | ) |

**PLAINTIFFS' REPLY**

Plaintiff by and through undersigned counsel, submits the following Reply on the issue of

whether the Plaintiff was an employee or an independent contractor under both the Federal Fair

Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and under the

Maryland Wage Payment and Collection Law ("MWPCL"), Maryland Code, Labor and

Employment Article §§ 3-501 *et seq.*

<u>**Argument**</u>

*Clarifying Affidavits of Defendants sworn deposition testimony cannot create a material
dispute of facts*

Defendant cannot create a genuine issue of material fact by submitting affidavits from

Larelle Little (a dancer and bartender), Shaquetta Daughtery (a dancer), and Kevin Klein (a

bouncer) who were all non-management employees, which stated that they kept track of the time

that Plaintiff came and left work, which conflicts with Defendant's earlier 30(b)(6) testimony of

General Manager Walter Robinson who stated that the Defendant does not keep records when

Plaintiff came to work or left work and Defendant has no sign in or sign out sheet.  *See Barwick*

*v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not

created where the only issue of fact is to determine which of the two conflicting versions of the

{Defendant's}testimony is correct."). In the August 9, 2013, Deposition of Walter Robinson, III,

0(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q Okay. Defendant has no record of ever paying wages or otherwise
> compensating Plaintiff for work duties performed? You never paid her wages?
> A Never paid her, no. P.22
> Q Okay. And you don't have a sign-in and sign-out sheet that shows that she's
> worked?
> A No. Girls come and go as they please.
> Q So you don't keep track of the number of hours they work?
> A No. P.45
> Q And where are their work schedules?
> A We don't have work schedules for contractors. P.46
> All right. So how many of your dancers are considered employees?
> A None have -- none chose to be employees so far.
> Q So you don't have any schedule or anything showing the number of hours or
> what day she worked in 2009?
> A They're completely -- you know, if they're independent contractors --
> Q You can answer the question yes or no.
> A No. P.46
> Q What about for 2010?
> A No. P.46-47
> Q What about for 2011?
> A No.
> Q What about for 2012?
> A No.
> Q What about sheets for fines?
> A No.
> Q What about sheets for tip-outs or tip-ins?
> A No. P.47
> Q So you're saying that none of the dancers have chosen to be employees?
> A To date, no. P.47
> Q Do you keep records?
> A No. You mean, records of what?
> Q Of the tip-out collected?
> A No.
> Q So who do they give it to?
> A There's a bartender, and she just, you know, collects it, puts it in an envelope.
> That's it.
> Q And she doesn't put who pays or anything?
> A No.

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant*

*PP&G, Inc.,*  P.22, P.27, P.28, P.37, P.45, P.46, P.47

Although Defendant has argued that the Plaintiff worked less hours than pled and offers the testimony of a co-workers as proof, it is the perception of the decision-maker, not the opinions of co-workers, that is relevant. See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 444 (4th Cir.1998). But, even that would only be relevant in the jury phase of this litigation because it is a factual dispute, it would not be relevant at all to the merits of Plaintiff's Summary Judgment Motion.

Defendant cannot create a genuine issue of material fact by submitting affidavits from Larelle Little (a dancer and bartender), Shaquetta Daughtery (a dancer), and Kevin Klein (a bouncer) who were all non-management employees, which stated that the Plaintiff and dancers are independent contractors and they have a choice to be employees or independent contractors. However, "[c]ourts have also stressed that the label that the parties give to their relationship is not controlling." Heath v. Perdue Farms, Inc., 87 F. Supp. 2d 454, 457 (D. Md. 2000). Many federal courts have found that exotic dancers are employees under FLSA when applying the six factor test in similar contexts. See, e.g., Thompson, 779 F. Supp. 2d at 151 (finding that exotic dancers were employees under the FLSA and under applicable state labor laws); Clincy, 808 F. Supp. 2d at 1350 (same); Morse v. Mer Corp., No. 08-1389, 2010 WL 2346334, at *6 (S.D. Ind. June 4, 2010) (same); Reich, 998 F.2d at 329 (affirming the district court's holding that the exotic dancers were employees under the protection of the FLSA); Thornton v. Crazy Horse, Inc., No. 06-251, 2012 WL 2175753, at *16 (D. Ak. June 14, 2012) (finding that an adult entertainment club was liable to dancers for withholding minimum wages).

### *Calling a Dancer an Independent Contractor Does not Make the Dancer an Independent Contractor under FLSA and the MWPCL*

Defendant argues that because Plaintiff was given the choice of being treated as an employee or independent contractor, and elected to be treated as an independent contractor, and

she signed a document created by the defendant that says that the dancer is an independent contractor, and she did not contact the IRS so that dancer is an independent contractor. This is not the case. FLSA has been consistently construed liberally to ensure that it "applie[s] even to those who would decline its protections" because "employers might be able to use superior bargaining power to coerce employees to . . . waive their protections under the Act." Tony and Susan Alamo Found. v. Sec. of Labor, 471 U.S. 290, 296, 302 (1985). Under MWPCL, an employer is "any person who employs an individual in the State." Md. Code Ann., Lab. & Empl. § 3-501(b). *see Freund,* 185 Fed.Appx. at 783 (not listing an individual's subjective belief about her employment status as a factor that guides an inquiry in this Circuit into the economic reality of a work relationship); *Harrell,* 992 F.Supp. at 1353 ("Defendant's. . . additional factors (characterization for tax purposes and the provision of employee benefits) are not relevant. Defendant cites no case which considers these factors in the context of the broad "suffer or permit to work" definition of employment contained in the FLSA.").

It is well settled that the mere fact that workers are labeled "independent contractors" does not negate the application of the economic realities test. *See Rutherford Food Corp.,* 331 U.S. at 729 ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]."); *see also Heath v. Perdue Farms, Inc.,* 87 F.Supp.2d 452, 457 (D.Md.2000) (quoting *Rutherford* for the proposition that "[c]ourts look not to the label, but to the underlying 'economic reality' of the relationship" in determining whether a worker is an independent contractor or employee under the FLSA. To further drive this point home, the Supreme Court articulates, "the purposes of the [FLSA] require that it be applied even to those who would decline its protections .... [otherwise] employers might be able to use superior bargaining power

to coerce employees ... to waive their protections under the [FLSA]." *Tony and Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 302 (1985). Since, entertainer does not have to have any experience, nor do they have to obtain an individual permit or license from the City, State or County to perform at all, the economic reality is that they are not independent contractors.

*The Determination of "Employee" status under the FLSA is a Question of Law*

Defendant does not deny that it is the courts duty and responsibility and not a jury to determine whether dancers at Defendants establishment were independent contractors or employees. "In deciding whether an individual is an `employee' within the meaning of the FLSA, the label attached to the relationship is dispositive only to the degree it mirrors the economic reality of the relationship." *Donovan v. Tehco, Inc.,* 642 F.2d 141, 143 (5th Cir.1981); *see also Tony and Susan Alamo Found.,* 471 U.S. at 302, 105 S.Ct. 1953 ("the purposes of the Act require that it be applied even to those who would decline its protections"); *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 729, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an `independent contractor' label does not take the worker from the protection of the Act."); *Freund,* 185 Fed.Appx. at 783 (not listing an individual's subjective belief about her employment status as a factor that guides an inquiry in this Circuit into the economic reality of a work relationship); *Harrell,* 992 F.Supp. at 1353 ("Defendant's. . . additional factors (characterization for tax purposes and the provision of employee benefits) are not relevant. Defendant cites no case which considers these factors in the context of the broad "suffer or permit to work" definition of employment contained in the FLSA."). The determination of "employee" status under the FLSA is a question of law, although it depends on subsidiary factual determinations. Employee status can be determined by the district court on a motion for summary judgment where there are no genuine disputes of material

fact. *See Hopkins v. Cornerstone America,* 545 F.3d 338, 343–46 (5th Cir.2008) (upholding

district court's summary judgment determination that workers were employees).

In order to determine whether an individual is an employee, courts must look to the

"economic reality" of the relationship by analyzing the following six factors:

> (1) The degree of control that the putative employer   has over the manner in
> which the work is performed;
> (2) The worker's opportunities for profit or loss
> dependent on his managerial skill;
> (3) the worker's investment in equipment or material, or his employment of other
> workers;
> (4) The degree of skill required for the work;
> (5) The permanence of the working relationship; and
> (6) The degree to which the services rendered are an
> integral part of the putative employer's business.

Schultz v. Capital Intern. Sec., Inc., 466 F.3d 298, 305 (4thCir. 2006). "No single factor is

dispositive." Id.  Several courts have addressed the question of whether a nude dancer is an

employee under the FLSA, and "[w]ithout exception, these courts have found an employment

relationship and required the nightclub to pay its dancers a minimum wage." *Harrell v. Diamond*

*A Entm't, Inc.,* 992 F.Supp. 1343, 1347-48 (M.D.Fla. 1997) (citing e.g. *Reich v. Circle C. Invs.,*

*Inc.,* 998 F.2d 324 (5th Cir.1993) (finding dancers are employees under the FLSA); *Reich v.*

*Priba Corp.,* 890 F.Supp. 586 (N.D.Tex.1995) (same); *Martin v. Priba Corp.,* 1992 WL 486911

(N.D.Tex. Nov.6, 1992) (same)); *see also Morse v. Mer Corp.,* No. 1:08-cv-1389-WLT-JMS,

2010 WL 2346334 (S.D.Ind. June 4, 2010) (same); *Jeffcoat v. Alaska Dep't of Labor,* 732 P.2d

1073 (Alaska 1987) (finding entertainers to be employees under state labor laws based on

FLSA); *Doe v. Cin-Lan, Inc.,* No. 08-cv-12719, 2008 WL 4960170 (E.D.Mich. Nov. 20, 2008)

(granting entertainer's motion for preliminary injunction, holding that entertainer was

substantially likely to succeed on claim that she is an employee under FLSA).

I.   **NATURE AND DEGREE OF CONTROL.**

Defendant states that Plaintiff is not controlled by the Defendant but that Plaintiff actions are

mandated not by the Club itself, but instead by Liquor Board handout. Defendant first attempts

rely on an undated Affidavit of Anthony Blount who stated that he was the General Manager at

the club from September, 2009 thru May, 2011. (Affidavit of Anthony Blount at P.1) The

Defendant's new reliance on the undated Affidavit of Anthony Blount contradicts Defendant's

Affidavit of Walter Robinson filed with this court on 6-12-13 where he states that he was the

employed as the general manager for the Defendant for the last 7 years. Affidavit of Walter

Robinson at P.1) The Defendant's new reliance on the undated Affidavit of Anthony Blount also

contradicts the sworn deposition testimony of Walter Robinson, Defendant's 30(b)(6) witness

who stated:

> BY MR. WIGGS:
> Q Approximately -- I'm sorry. What is your name?
> A My name is Walter Alexander Robinson, III.
> And what's your date of birth?
> A 10/30/1981.
> Q And do you have any criminal convictions?
> A No.
> Q And how long have you been employed at
> Norma Jean's?
> A It's been like five years. Like a little more than five years.  P5-6
>
> Q And what is your position?
> A I'm a general manager.
> Q And what are your duties?
> A Pretty much my duties are to, you know, hire our employees, you know, the
> bartenders, security. I manage the contractors, where as they -- you know,
> basically they have to be told about the Maryland State laws.
> Q Who are you referring to?
> A Dancers.
> Q Who told you that they were contractors?
> A When I was hired, I was told they were contractors.
> Q Who told you that?
> A My -- the guy that hired me. I mean that --
> Q Who was that?

A His name was -- we called him Mac. But I believe his real name -- I forget his full name. He's the one who -- he was training me on how to –

MR. THEMELIS: Mr. Wiggs, the name was Garrett MacMillion.
LISA IRELAND: MacMillion. A MacMillion. I'm sorry. We called him Mac for short.
LISA IRELAND: M-A-C-M-I-L-L-I-O-N.
MR. THEMELIS: Is that correct, sir?
HE WITNESS: That's correct.
BY MR. WIGGS:
Q He was your supervisor?
A Yeah. He's the guy that trained me, told me what my job duties were.
Q Okay. And do you know who hired him?
A Yes.
Q Who?
A Lisa Ireland.
Q And who hired you?
A Lisa Ireland.
Q And you said it was part of your job – or part of your duties was to hire people?
A Was to hire -- we have like employees such as like bartenders, security, you know. And, you know, that's pretty much it. But my job is to make sure we hire the right bartenders, the right amount of bartenders, they have the right qualifications. You know, I do things like make sure that the bar is managed, like a regular bar manager. I look at, you know, inventory. You know what I mean?
Q Do you have the authority to fire people?
A Yeah. As a manager of my employees, I do fire employees.
Q Okay.
A Or hire employees.
Q And were you the one that -- you were the one that fired Miss Butler, correct?
A No, I didn't fire Miss Butler.
Q You told her not to come back to the club?
A No. I told her to come back within a month.

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.5-8

Plaintiff's counsel, through their investigation anticipated that the Defendant might try

and pull a fast one on the court and try and file an Affidavit for Anthony Blunt contradicting the

sworn deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc., if the

testimony did not go well for Defendant. So, Plaintiff's counsel specifically asked the following

during the sworn deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.

which was not contradicted by Lisa Ireland, President Defendant PP&G, Inc., who attended the

30(b)(6) deposition, nor was it contradicted during the 30(b)(6) designee of Defendant PP&G,

Inc. deposition:

> MR. WIGGS:
> Q Are you familiar with Mr. Blunt, Anthony Blunt?
> A No.
> Q Okay.
> A Anthony Blunt?
> Q Wasn't he employed at the Norma Jean's Nightclub?
> A I don't know who you mean.
> Q So were you the only manager at the --
> A Yes. I was hired as a manager.
> Q But you were the only one? You never
> worked with a Mr. Blunt?
> A No, I never worked with Mr. Blunt.
> Q You never had a supervisor named Mr. Blunt?
> A No.
> Q Mr. Blunt never fired you before?
> A No.
> Q Okay. All right.
> A Lisa is the only person that can fire me.
> Q Okay. Lisa.
> A She's my only supervisor. And since Mac
> passed, you know, I have no other supervisor.

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant
PP&G, Inc.,* P.67-68

> Q Okay. Did you during your tenure rely on that Liquor Board handout while you
> were being trained by Mac?
> A Yes. Like I said, I carried it around with me quite a while.
> Q Okay. And did you ever ask the Liquor Board about the independent contractor
> language?
> A I didn't ask them, but we've had – you know, we've had no -- no one's ever had
> a problem with it before.

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant
PP&G, Inc.,* P.80-81

There is an issue as to whether these "clarifying" affidavits can even be considered. First,

in the Fourth Circuit, a genuine issue of material fact is not created where the only issue of fact is

to determine which of the two conflicting versions of the Defendant's testimony is correct. See

Alba v. Merrill Lynch & Co., 198 Fed. Appx. 288, 300, 2006 WL 2161005, at *10 (4th Cir. May

26, 2006). Defendant cannot create a genuine issue of material fact by submitting an undated

affidavit from Anthony Blount (alleges he was the general manager at the same time doing the

same exact duties as Defendant's 30(b)(6) designee and contradicts the testimony of the

Defendant's 30(b)(6) ) that conflicts with Defendant's earlier 30(b)(6) testimony of General

Manager Walter Robinson. *See Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("A

genuine issue of material fact is not created where the only issue of fact is to determine which of

the two conflicting versions of the {Defendant's}testimony is correct.").

       Defendant further states that is the State of Maryland and the City of Baltimore: control

what types of activities can and cannot occur in the Club; control which permits and licenses

club owners must have; control what hours the Club can legally be open for business; and

impose a duty to reasonably monitor Independent contractors, such that they do not violate the

Liquor Board handout. Defendant also argues that Independent contractors are not required to

adhere to rules of conduct from the Club, and Club does not have any rules the dancers must

follow. Defendants' arguments are unavailing and do not even attempt to explain away their

actions of control that have nothing to do with and are not even mentioned in the Liquor Board

handout. The August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of

Defendant PP&G, Inc. the deposition went like this:

> Q Did you have the ability to discipline the Plaintiff by taking her off the
> schedule? Either you had the ability or you --
> A Yes. P. 23-24
> Q Okay. So you set the club rules and standards for who could and could not be
> hired and work for Norma Jean's Nightclub?
> A Yes. P. 24
> Q The Defendant is responsible for advertising, location, business hours,
> maintenance of facility, aesthetics, and inventory of beverages and food?
> A Yes. There's no food. P.30
> Q At all times, the Plaintiff was wholly dependent on the Defendant to provide a

facility, as well as amenities to perform her job duties while working at Norma Jean's Nightclub?

A Yes. P.33

Q Okay. The Plaintiff's employment with Defendant was dependent on Defendant's financial savvy and business know-how to keep Defendant's business financially sound so as to keep the doors open and afford Plaintiff the opportunity to work at Norma Jean's Nightclub?

A Yes. P.33

Q And what was the paramount issue used in your determination to hire an independent contractor?

A Well, when I contract dancers, I'm mostly looking for attitude. You know, positive attitude. You know what I mean? Someone who makes you feel comfortable. Just like, you know -- that's all. P.72

Q Okay. The Defendant did not require any level of education or previous certification such as by way of example completion of a pole dance class to work at Norma Jean's Nightclub?

A No skill was necessary. No skill was required. P.33

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.23, P.24, P.30, P.33, P.72


The August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant

PP&G, Inc. the deposition went like this:

> Q And you said it was part of your job – or part of your duties was to hire people?
> A Was to hire -- we have like employees such as like bartenders, security, you know. And, you know, that's pretty much it. But my job is to make sure we hire the right bartenders, the right amount of bartenders, they have the right qualifications. You know, I do things like make sure that the bar is managed, like a regular bar manager. I look at, you know, inventory. You know what I mean?
>
> Q Do you have the authority to fire people?
> A Yeah. As a manager of my employees, I do fire employees.
> Q Okay.
> A Or hire employees.
> Q And were you the one that -- you were the one that fired Miss Butler, correct?
> A No, I didn't fire Miss Butler.
> Q You told her not to come back to the club?
> A No. I told her to come back within a
> month.
> Q Okay. Didn't you state in your Interrogatories that you fired her because of a fight? P7-8
> A I didn't fire her because of a fight. I suspended her contract. And when girls have fights like this, we usually suspend them for a matter of two weeks.

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.7-8

"An employer cannot saddle a worker with the status of independent contractor, thereby relieving itself of its duties under the F.L.S.A., by granting him some legal powers where the economic reality is that the worker is not and never has been independently in the business which the employer would have him operate." *Mednick v. Albert Enters., Inc.,* 508 F.2d 297, 303 (5th Cir.1975). As another court in the 5th Circuit examining the same issue that is now before the Court noted:

> The mere fact that [the club] has delegated a measure of discretion to its dancers does not necessarily mean that its dancers are elevated to the status of independent contractors. Indeed, one could say that the nature of a dancer's job requires some measure of discretion and flexibility. The question this Court must resolve is whether a . . . dancer's freedom to work when she wants and for whomever she wants reflects economic independence, or whether these freedoms merely mask the economic reality of dependence.

*Harrell v. Diamond A Entm't, Inc.,* 992 F.Supp. 1343, 1347-48 at 1349 (M.D.Fla.1997) Although, Defendant maintains that the club does not enforce any rules except only those which bear directly on the compliance with the law. The record is undisputed that that the Club's management has the authority to discipline entertainers for not complying with the club rules, and has done so to Plaintiff. Defendant made deductions from Plaintiff's pay by way of a daily $45 fee out of her tips to work at the Club and it doesn't matter what time the dancer comes to work, the $45 fee is mandated by Defendant to be paid by Plaintiff to Defendant.  In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q What's the charge to work at the club?
> A It's -- there is no charge. There's a tip at the end of the night if you make $45 to pay to help keep the place clean. You know what I mean? It helps keep the lights on.
> Q So it's a tip-out?
> A Yeah. It's a tip.
> Q For $40?
> A Forty-five dollars.

Q Forty-five dollars.
A Yeah. It doesn't matter what time you get there – P.25
Q So who set the $45 tip out?
A That was just there when I got there. It was always $45.
Q Who told you about it?
A When I was hired. The guy who trained me, Mac. P.26-27
Q You instructed them to pay it? Someone instructed them?
A I tell people when they come in that if they make their money, they can pay a $45 tip-out. This is very common. It's a maintenance fee. We explain that when the girls are hired. P.28
Q Okay. Now, what you referred to a maintenance fee, define what that is related to. In other words -- strike that.
Explain where that money goes.
A Okay. Basically, it pays to clean the carpets, to re-stock soap and toilet tissue, paper towels, toiletries, lady products, ice machines, maintenance on repairing, you know, everything.
Q Okay. So would you classify -- it is better classified as a cleaning fee?
A Yeah. Cleaning fee. P.58-59

Q Okay. Did you during your tenure rely on that Liquor Board handout while you were being trained by Mac?
A Yes. Like I said, I carried it around with me quite a while.
Q Okay. And did you ever ask the Liquor Board about the independent contractor language?
A I didn't ask them, but we've had – you know, we've had no -- no one's ever had a problem with it before. P.80-81

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc., P.25, P.26, P.27, P.28, P.58, P.59, P.80, P.81*

In the August 9, 2013, Deposition of Lisa Ireland, President of PP&G, Inc., 30(b)(6)

designee of Defendant PP&G, Inc. went like this:

Q You stated that part of the money from the $45 goes to items like cleaning rugs and having pool tables re-surfaced?
A No. Cleaning. The cleaning of the rugs, cleaning of the pool tables. The cleaning of the girls' dressing room.
Q Okay. So it goes to cleaning of the facility?
A The facilities they use. The girls use the pool tables. They entertain customers with pool tables. I know they appreciate the clean carpet. I would, if was a girl working in that environment. The lower you let a club go down, the less likely you are to have happy employees. P. 17-18

*Exhibit 2, August 9, 2013, Deposition of Lisa Ireland, President of PP&G, Inc., 30(b)(6) designee of Defendant PP&G, Inc., P. 17-18*

Defendant even sets the minimum that a dancer can charge a customer for a lap dance,

$20 per song. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of

Defendant PP&G, Inc. the deposition went like this:

> Q -- when patrons want a lap dance, who sets the amount to be paid?
> A The dancer.
> Q Okay. Is there a minimum amount -- I'm sorry. Strike that. Is there an amount
> that is suggested?
>
> A Yeah. By -- you know, we -- most girls use like a $20 per song, you know,
> based on -- this way, you know, one girl is not charging a different price than
> another girl.

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant
PP&G, Inc., P.56-57*

The uncontested evidence in the record shows that the Club has enforced it's discipline

rules against Plaintiff.  The club sets the $20 amount the dancer charges the customer per song.

The club makes dancer pay $45 tip out or Maintenance fee per shift. Further, club rules as to the

$20 cost of lap dances, disciplining of contractors and dancers  paying a $45 tip out or

Maintenance fee per shift  have nothing to do with state laws or local ordinances and all show the

control the club has over the dancers. Based upon the totality of the record Defendant exercises a

significant amount of control over the entertainers, and that this factor ways in favor of finding

an employer-employee relationship.

## II.  OPPORTUNITY FOR PROFIT OR LOSS.

Defendant states that this court should to the Affidavit's of Anthony Blount and Kevin Klein

on this issue.  However, Defendant admits that Plaintiff does not have the opportunity for even

minimal loss. Defendant states that when a dancer "has not earned enough to pay the

maintenance fee [charged to dancers by Defendant], then it shall be waived without a fine,

penalty or sanction of any kind." ECF No. 12-1 at 3.

At no time while Plaintiff worked as an exotic dancer for Defendant did Plaintiff enjoy

any opportunity for profit or loss and was dependent on the financial success of the NORMA

JEAN'S NITE CLUB. In the August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6)

designee of Defendant PP&G, Inc. the deposition went like this:

> Q She didn't have the opportunity to enjoy in the profit or loss of the business of Norma Jean's Nightclub?
> A No. P. 17-18
>
> Q The Plaintiff has not invested money into Norma Jean's Nightclub?
> A No.
> Q And the Plaintiff doesn't hold any membership or ownership interest in Norma Jean's Nightclub?
> A No.
> Q And the Plaintiff's earnings at Norma Jean's Nightclub came only from her tips?
> A Yes. P. 30
> Okay. Now, the Defendant, PP&G, Inc., was solely responsible for any investments in the business; is that correct?
> A Correct.
> Q Did the entertainers as independent contractors share in the profits of --
> A Say that one more time. I'm sorry.
> Q Yes, sir. As entertainers who were independent contractors, did they share in the profits of the business?
> A No. P.73

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc., P.17, P.18, P.30, P.73.*

At no time while Plaintiff worked as an exotic dancer for Defendant did Plaintiff ever

make a financial investment in the Club.  In the August 9, 2013, Deposition of Walter Robinson,

III, 30(b)(6) designee of Defendant PP&G, Inc. the deposition went like this:

> Q The Plaintiff has not invested money into Norma Jean's Nightclub?
> A No.
> Q And the Plaintiff doesn't hold any membership or ownership interest in Norma Jean's Nightclub?
> A No.
> Q And the Plaintiff's earnings at Norma Jean's Nightclub came only from her tips?
> A Yes. P. 30
> Okay. Now, the Defendant, PP&G, Inc., was solely responsible for any investments in the business; is that correct?
> A Correct.
> Q Did the entertainers as independent contractors share in the profits of --
> A Say that one more time. I'm sorry.

Q Yes, sir. As entertainers who were independent contractors, did they share in the profits of the business?
A No. P.73

*Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.30, P.73.

Plaintiff has not invested in Defendant nor does Plaintiff hold any membership or ownership interest in Defendant. Plaintiff's earnings came only from her tips. The ability of an exotic dancer to entice her customers to give large tips is known in the industry as "hustling." *See Harrell v. Diamond A Entm't, Inc.,* 992 F.Supp. 1343,1350–52 (M.D.Fla.1997). Courts have rejected the relevance of the "hustling" argument to the opportunity for profit or loss factor of the economic reality test, finding that the appropriate inquiry "has more to do with relative investments, with control over larger aspects of the business, and with like forms of initiative." *Id.* As the Fifth Circuit explained in *Reich v. Circle C. Investments, Inc.,* "once customers arrive at [the club], a dancer's initiative, hustle, and costume significantly contribute to the amount of her tips. But [the club's owner] has a significant role in drawing customers to its nightclub[ ].... [The owner] is responsible for advertisement, location, business hours, maintenance of facilities, aesthetics, and inventory of beverages and food." 998 F.2d at 328 (concluding that the dancers "are far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments.").

Other courts have recognized the limited opportunities for exotic dancers to realize profit. See Reich v. Circle C. Invs., Inc., 998 F.2d 324, 328 (5th Cir. 1993) (finding the employer "has a significant role in drawing customers to its nightclubs" and thus, "the dancers are far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments") (internal citations omitted).

Defendant also implicitly acknowledges that dancers do not invest in the equipment

needed for the facility. While Defendant requires all its dancers to pay a "maintenance fee" because "they use all of the facilities as an 'Entertainer,'" Defendant states that the maintenance fee is applied to the cleaning of the night club rather than any sort of investment in the property or the business. ECF No. 12-2 at 3. See Clincy v. Galardi S. Enters., Inc., 808 F. Supp. 2d 1326, 1346 (N.D. Ga. 2011) (noting that plaintiffs "do not make any capital investment in Defendant's facilities, advertising, maintenance, security, staff, sound system and lights, food beverage . . . the courts which have addressed this factor have universally concluded that a dancer's investment  is minor when compared to the club's investment") (citations omitted).

Further, it is well established that courts look at the opportunity for profit or loss as the amount realized by a business over and above capital investment. *See Brock v. Mr. W Fireworks. Inc.*, 814 F.2d 1042, 1050-51 (5th Cir.), *cert. denied*, 484 U.S. 924 (1987); *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1371-72 (9th Cir. 1981), (The focus upon who controls the major determinants of profit and who exercises the managerial skills on which profit or loss depend.) *see also Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1294 (3rd Cir. 1991); *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 328 (5th Cir. 1993). Profit realized from capital expenditure or managerial skills is distinguishable from increased earnings due to industry and efficiency. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) ("While profits to the boners depended upon the efficiency of their work, it was more like piecework than an enterprise that actually depended for success upon the initiative, judgment or foresight of the typical independent contractor."). Here, as stated above, Plaintiff's income was based wholly on receipt of tips from Defendant's customers and Plaintiff was not afforded an opportunity for gain or loss over and above Defendant's capital investment.

Finally, this factor requires the Court to consider Plaintiff's investment in Defendant's

business. In making the investment finding under the "economic reality" test, "it is appropriate to compare the worker's individual investment to the employer's investment in the overall operation." *Baker*, 137 F.3d at 1442. In weighing the relative investments of a worker and an alleged employer, courts must consider "the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself." *Dole v. Snell*, 875 F.2d 802, 810 (10th Cir. 1989).

Upon applying a relative investment analysis to the instant case, it is clear that a reasonable fact-finder would regard Plaintiff's investment non-existent or, at worst, *minimis* compared to Defendant's business-specific investments. *See Mr. W Fireworks. Inc.*, 814 F.2d at 1047 (fire stand operator's use of a computer did not involve an investment because he had originally purchased the computer for schoolwork). Indeed, in *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 304 (5th Cir. 1998) the Fifth Circuit concluded that the relative investment factor weighed in favor of employee status, notwithstanding that workers owned or leased their work vehicles. The court noted that "[a]lthough the driver's investment of a vehicle is no small matter, that investment is somewhat diluted when one considers that the vehicle is also used by most drivers for personal purposes." *Id.* As such, this factor weighs strongly in favor of employee status.

III. **RELATIVE INVESTMENT.**

Defendant also implicitly acknowledges that dancers do not invest in the equipment needed for the facility. While Defendant requires all its dancers to pay a "maintenance fee" because "they use all of the facilities as an 'Entertainer,'" Defendant states that the maintenance fee is applied to the cleaning of the night club rather than any sort of investment in the property or the business. ECF No. 12-2 at 3.

Defendant states that this court should to the Affidavit's of Anthony Blount on this issue and

notes that the Plaintiff could dance anywhere as an Independent contractor and dance in the same

outfits.  As the court said in Harrell v. Diamond A Entm't, Inc., 992 F.Supp. 1343, 1347-48

(M.D.Fla.1997) ("Defendant would have us believe that a dancer. . . could hang out her own

shingle, pay nothing in overhead,—no advertising, no facilities, no bouncers,—and draw in a

constant stream of paying customers.")  Again, Defendants do not cite a single case in which a

court has accepted this line of reasoning, but there are several that have rejected it.  *See e.g.,*

*Circle C,* 998 F.2d at 324 ("The fact that the district court did not make specific findings

regarding Circle C's investment does not detract from our analysis given the obvious significant

investment Circle C has in operating a nightclub. The record does not completely identify Circle

C's investment, but it does reveal that Circle C owns the liquor license, owns the inventory of

beverages and refreshments, leases fixtures for the nightclub (e.g., the stage and lights), owns

sound equipment and music, maintains and renovates the facilities, and advertises extensively).";

*Morse,* 2010 WL 2346334, at *5 ("The instant case is markedly similar to *Circle C.* The

Plaintiffs `do not make any capital investment in Defendant's facilities, advertising, maintenance,

security, staff, sound system and lights, food, beverage, and other inventory.' . . . The Plaintiffs'

only investment is in their costumes and their general appearance (i.e. hair, makeup, and

nails). . . . Thus, as in Circle C, this factor tips in favor of employee status."); *Harrell,* 992

F.Supp. at 1350 ("Defendant fails to mention, however, any of the undoubtedly material

expenditures (for advertising, facilities, maintenance, etc.) made by [the club]. The courts which

have addressed this factor have universally concluded that a dancer's investment is minor when

compared to the club's investment." (citations omitted); *Priba Corp.,* 890 F.Supp. at 593

("Entertainers at the club make no investment in its facilities or atmosphere aside from choosing

what clothing to wear when performing. All investment and risk capital is provided by

defendants. Indeed, but for defendant's provision of the lavish work environment, the entertainers

at the club likely would earn nothing."). The Court must find that the Plaintiff's investment in

exotic dancing is small in comparison to Defendant's investment in the Club, and this factor

weighs in favor of finding an employer-employee relationship.

IV. **NECESSITY OF SPECIAL SKILL**

Many other courts have previously found that little specialized skill is required to be a

nude dancer. *See*, *e.g.*, *Morse*, 2010 WL 2346334, at *5; *Harrell*, 992 F. Supp. at 1351; *Circle C*

*Invs.*, 998 F.2d at 328. Defendant cannot even argue that nude dancing that reaches the level of

high art, requiring extensive skill, training, and expertise because nothing in the record indicates

that "artistic ability" had anything to do with eligibility to dance at the club.   Defendant concedes

that Plaintiff's position did not require any "special skill." *see also Circle C,* 998 F.2d at 328

(finding that many of the club's dancers had never before worked as a nude entertainer and that

dancers "do not need long training or highly developed skills")). Defendant states that the

entertainers are not required to take dancing classes because the primary considerations when

hiring dancers are the "personality" and "presence" of the individual. ECF No. 12 at13. Lastly,

while Defendant argues that "Plaintiff alone is not an integral part of the Defendant's business,"

it admits that the entertainers/dancers "collectively were an integral part of the Defendant's

business." Id. at 14. See Thompson, 779 F. Supp. 2d at 151 (quoting Morrison v. Int'l Programs

Consortium, Inc., 253 F.3d 5, 11 (D.C. Cir. 2001)) (holding [t]he Court's inquiry, however,

focuses on 'the extent to which the work is an integral part of the employer's business,' not on

the role of the employee individually").

Defendant's 30(b)(6) designee boldly stated that  "No skill was necessary. No skill was

required" to be a dancer a Defendant's club. *Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.33. There was no particular skill required of Plaintiffs. *See Heath,* 87 F.Supp.2d at 458 (noting that even where the [workers'] position required generalized supervision and management skills, such additional considerations did not render them independent contractors). Plaintiffs' job required them to dance in various stages of undress for Defendants' patrons. The only job qualification – beyond the willingness to disrobe in a public setting – was that the dancer has a positive attitude. *Exhibit 1, August 9, 2013, Deposition of Walter Robinson, III, 30(b)(6) designee of Defendant PP&G, Inc.,* P.79 This was not a high skill job. *See Heath.* at 458 (noting that a chicken catcher's ability to become faster with experience "is true of most repetitive tasks, skilled or unskilled").

Given the above statement of the Defendant in this case, Plaintiff possessed no specialized skill necessitating a prolonged analysis of this factor. Defendant did not require any level of education or previous certification (such as, by way of example, completion of a pole dance class) Many other courts have previously found that little specialized skill is required to be a nude dancer. *See, e.g., Morse,* 2010 WL 2346334, at *5; *Harrell,* 992 F.Supp. at 1351; *Circle C Invs.,* 998 F.2d at 328. As such, the Court must conclude that the lack of specialized skills required for Plaintiff's job weighs in favor of the Plaintiff's employee status. Examining the record as a whole, the Court must find that special skills are not required to perform as an entertainer at the club, and this factor weighs in favor of finding an employer-employee relationship between the Club and Plaintiff.

V. **PERMANENCY OF WORKING RELATIONSHIP.**

Plaintiff worked for Defendant for 2007-2012. However, many courts, however, have found exotic dancers to be employees under the FLSA, despite finding that the employment

relationship lacked a high degree of permanence. *See Circle C. Invs.,* 998 F.2d at 328–29 ("The transient nature of the work force is not enough here to remove the dancers from the protections of the FLSA.").

VI. **IMPORTANCE OF ENTERTAINERS TO THE CLUB.**

Next, the Court considers the extent to which Plaintiff's exotic dancing was an integral part of Defendant's business. It is undisputed that Defendant maintains and adult entertainment business as they admit that they have an adult entrainment license. Defendant argue that "[n]ude dancing, while also contributing to the Club's caché, is not it's essential function." while Defendant argues that "Plaintiff alone is not an integral part of the Defendant's business," it admits that the entertainers/dancers "collectively were an integral part of the Defendant's business." Id. at 14. See Thompson, 779 F. Supp. 2d at 151 (quoting Morrison v. Int'l Programs Consortium, Inc., 253 F.3d 5, 11 (D.C. Cir. 2001)) (holding [t]he Court's inquiry, however, focuses on 'the extent to which the work is an integral part of the employer's business,' not on the role of the employee individually").

*Defendant's argument that they receive no benefit from the presence of entertainers is*

*false*

Defendant attempts to argue that they receive no benefit from the presence of entertainers, stating that Club does not profit from the dancers; the dancers themselves do. No reasonable juror examining the record as a whole would believe that Defendant's statement matches reality. First, there is no dispute that when dancers arrive at the Club they are required to pay a $45 maintenance fee. This house fee, collected by the Club. In the Affidavit of Walter Robinson filed with this court on 6-12-13 at P.3, states that Plaintiff is one of "many Independent Contractors who are entertainers and who collectively, not individually, constitute an integral

part of the Defendant's business." He further states that during the shift that Plaintiff worked, "35-50 dancers entertained with her." *Affidavit of Walter Robinson filed with this court on 6-12-13 at P.3* That means for that shift, the night shift alone, the Defendant made $45 from each of the 35-50 dancers. That equals 35 x $45 = $1575, 50 x$45 =$2250. So for the night shift only, from the $45 maintenance fee from each dancer, the Defendant made between $1575-$2250 per night. If you times that by 364 days in a year (Defendant has stated they are closed on Christmas) that equals $573,330 - $819,000 a year in maintenance fees *from the night shift alone* in cash from the dancers earnings which were their tips. That does not include the money form the day shift.

Moreover, even if a minority of the Club's customers attend because of the presence of nude entertainment, those customers represent revenue to the Club through door fees and alcohol sales. To believe Defendant's statement that Club does not profit from the dancers would require a juror to believe that the Club's profit would be the same regardless of whether the Club had any nude entertainment. The record presents no logical path to such a conclusion.

In the present action the entertainers did not perform at club without the expectation of compensation. While they did not receive compensation directly from club, their compensation from customers was dependent upon the Club's operation. The entertainers that work at club have no expectation of compensation from Defendant, but they do expect to be indirectly compensated by the Club's customers. Like the plaintiff in *Haavistola,* entertainers "[do] not affiliate with the [Club] without reward entirely." Plaintiffs are compensated by reason of their work as entertainers and in order to receive this compensation they provide services to the Club and its customers. Finally, none of the cases cited by Defendant support a conclusion that the entertainers are not employees based on the facts in this record.

It is clear that she Defendant has utilized calling dancers independent contractors to intentionally get around the FLSA and the MD equivalent. Plaintiff and this Court should find it mind boggling that there is no affidavit from the owner of PP&G, INC. because they are the one receiving all economic benefits from their illegal practices. Based upon the record as a whole, a reasonable juror could not find that the presence of nude entertainment is not integral to the Club. This factor weighs in favor of finding an employer-employee relationship.

VII.   **OTHER CONSIDERATIONS.**

### B. Defendant Failed to Pay Plaintiffs Wages at Least Equal to the Federal Minimum Wage.

Defendant failed to oppose this section of Plaintiff's Motion therefore it is conceded and Plaintiff is entitled to judgment as a matter of law on this issue. Defendant did not come forward with any evidence that they could introduce at trial in support of their position on this issue. "The moving party is 'entitled to judgment as a matter of law' when the nonmoving party fails to make an adequate showing on an essential element for which it has the burden of proof at trial." *Maracich v. Spears*, 675 F.3d 281, 291 (4th Cir. 2012), *cert. granted*, 133 S. Ct. 98 (2012).

### C. In Addition to Their Unpaid Wages, Plaintiffs are Entitled to Liquidated Damages in an Equal Amount to Their Unpaid Wages.

Defendant failed to oppose this section of Plaintiff's Motion therefore it is conceded and Plaintiff is entitled to judgment as a matter of law on this issue. Defendant did not come forward with any evidence that they could introduce at trial in support of their position on this issue. "The moving party is 'entitled to judgment as a matter of law' when the nonmoving party fails to make an adequate showing on an essential element for which it has the burden of proof at trial." *Maracich v. Spears*, 675 F.3d 281, 291 (4th Cir. 2012), *cert. granted*, 133 S. Ct. 98 (2012).

**D. Defendant's Practice of Deducting Plaintiffs' Wages for Various Fees and Fines Associated with Plaintiffs' Employment Duties and Performances Constituted Unlawful Deductions in Violation of the MWPCL.**

Defendant concedes that it requires all its dancers to pay a $45 "maintenance fee" at the end of every shift they worked out of their tips. ECF No. 12-2 at 3. Defendant failed to oppose this section of Plaintiff's Motion therefore it is conceded and Plaintiff is entitled to judgment as a matter of law on this issue. Defendant did not come forward with any evidence that they could introduce at trial in support of their position on this issue.  "The moving party is 'entitled to judgment as a matter of law' when the nonmoving party fails to make an adequate showing on an essential element for which it has the burden of proof at trial." *Maracich v. Spears*, 675 F.3d 281, 291 (4th Cir. 2012), *cert. granted*, 133 S. Ct. 98 (2012).

## CONCLUSION

In consideration of the foregoing, and for good cause shown, Plaintiff requests that this Honorable Court enter Judgment as a Matter of Law in favor of Plaintiff and against Defendant with regard to Plaintiff's Motion.

Respectfully submitted,


___/s/_____
J. Wiggs, Esq.
The Wiggs Law Group, LLC
9701 Apollo Drive
Suite 301
Upper Marlboro, MD 20774
240-326-3711
Counsel for Plaintiff